## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | |
|---|---|
| MARKING OBJECT VIRTUALIZATION INTELLIGENCE, LLC, | Civil Action No._____ |
| *Plaintiff,* | **JURY TRIAL DEMANDED** |
| v. | |
| KUDELSKI S.A. D/B/A/ KUDELSKI GROUP, NEXGUARD LABS USA, INC., NEXGUARD LABS NETHERLANDS B.V., AND CIVOLUTION USA, INC. | |
| *Defendants.* | |

### COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Marking Object Virtualization Intelligence, LLC ("MOV Intelligence" or "Plaintiff"), by and through its attorneys, brings this action and makes the following allegations of patent infringement relating to U.S. Patent Nos.: 6,553,127 ("the '127 patent"); 6,360,000 ("the '000 patent"); 8,014,524 ("the '524 patent"); and 6,931,536 ("the '536 patent") (collectively, the "patents-in-suit" or the "MOV Intelligence Patents").  Defendants Kudelski S.A. D/B/A/ Kudelski Group, NexGuard Labs USA, Inc., NexGuard Labs Netherlands B.V., and Civolution USA, Inc. (collectively, the "Kudelski Group" or "Defendant") infringe each of the patents-in-suit in violation of the patent laws of the United States of America, 35 U.S.C. § 1 *et seq*.

### INTRODUCTION

1.      MOV Intelligence and its wholly-owned subsidiary, MOV Global Licensing LLC ("MOV Global Licensing") pursues the reasonable royalties owed for Kudelski Group's unauthorized use of patented groundbreaking technology both here in the United States and

throughout Europe.  MOV Intelligence and its subsidiaries were assigned the rights to these patented technologies by Rovi Corporation ("Rovi").[1]

2.      Rovi Corporation was a pioneer and leader in protecting computer technology, including digital rights management ("DRM") and digital watermarking systems.  Rovi assigned MOV Intelligence rights to over 233 patents including many of John O. Ryan's, the founder of Rovi predecessor Macrovision, groundbreaking patents.[2]

## THE PARTIES

## MARKING OBJECT VIRTUALIZATION INTELLIGENCE, LLC

3.      Marking Object Virtualization Intelligence, LLC ("MOV Intelligence") is a Texas limited liability company with its principal place of business located at 903 East 18th Street, Suite 217, Plano, Texas 75074.  MOV Intelligence is committed to advancing the current state of DRM and watermarking technologies.

4.      MOV Intelligence Global Licensing, LLC ("MOV Global Licensing") is a wholly-owned subsidiary of MOV Intelligence and assists in the licensing of MOV Intelligence's patents in territories outside the United States with a focus on the European Union (and the United Kingdom).[3]  MOV Intelligence Global Licensing, LLC is a corporation organized under the laws of Delaware.

5.      Rovi assigned the following patents to MOV Intelligence: U.S. Patent Nos. 7,299,209; 6,510,516; 6,802,006; 7,650,504; 6,813,640; 7,650,418; 7,200,230; 7,124,114; 6,381,367; 6,374,036; 6,360,000; 6,553,127; 6,701,062; 6,594,441; 7,764,790; 8,014,524; 6,931,536; and International Patent Nos. DE60047794; DE60148635.8; DE60211372.5; DE69901231.7-08; DK1047992; EP1047992; EP1303802; EP1332618; EP1444561;

---

[1] On April 29, 2016, Rovi Corporation acquired TiVo, Inc. The combined company operates under the name TiVo, Inc.

[2] *See* U.S. Patent Nos. 6,381,367; 7,764,790; 6,701,062; 8,014,524; German Patent Nos. DE60001837 and DE60001837D1; Chinese Patent No. CN1186941C; Canadian Patent No. CA2379992C; European Patent No. EP1198959B1; and Japanese Patent No. JP4387627B2.

[3] Wolfram Schrag, *EU-Patent steht auf der Kippe*, BR.COM NACHRICHTEN (August 2016).

ES1047992; FR1047992; FR1303802; FR1332618; FR1444561; GB1047992; GB1303802; GB1332618; GB1444561; GR3040059; IE1047992; IE1444561; IT1047992; NL1047992; NL1444561; PT1047992; and SE1047992.

6.      MOV Intelligence has the right to sublicense the following international patent assets: AT1020077; AT1198959; AT1080584; ATE232346; AT1020077; AU729762; AU741281; AU753421; AU743639; AU714103; AU729762; AU2002351508; AU765747; AU2000263715; BE1020077; BE1198959; BE1020077; BE1080584; BE900498; BRPI 9812908-2; BR9709332.7; BRPI 9812908-2; CA2305254; CA2332546; CA2379992; CA2305254; CA2332548; CA2557859; CA2252726; CA2462679; CA2315212; CA2416304; CA2425115; CH1020077; CH1080584; CH900498; CH1020077; CH1047992; CNZL98809610.2; CNZL99806376.2; CNZL00811179.0; CNZL98809610.2; CNZL99806377.0; CNZL97194746.5; CNZL02820738.6; CNZL99802008.7; CNZL00819775.X; CNZL200510089437; DE69807102.608; DE60001837.7; DE69908352.4-08; DE69718907.4-08; DE69807102.608; DK1020077; DK1080584; DK1198959; DK1020077; DK900498; EP1020077; EP1198959; EP1080584; EP900498; EP1020077; ES1020077; ES1198959; ES1080584; ESES2191844; ES1020077; FI1020077; FI1080584; FI1020077; FI900498; FR1020077; FR1198959; FR1080584; FR900498; FR1020077; GB1020077; GB1198959; GB1080584; GB900498; GB1020077; GR3041381; GR3045620; GR3043304; GR3041381; HK1028696; HKHK1035625; HK1028696; HK1035282; HK1018562; HKHK1069234; HKHK1057115; HK1083653B; IE1020077; IE1198959; IE1020077; IE1080584; IE900498; IL135498; IL139543; IL148002; IL135498; IL139544; IN201442; IN220504; IN201442; IN207829; IT1020077; IT1080584; IT900498; IT1020077; JP4139560; JP4263706; JP4387627; JP4551617; JP4139560; JP4263706; JP3542557; JP4627809; JP4698925; JP4366037; JP4307069; KR374920; KR422997; KR761230; KR374920; KR362801; KR478072; KR689648; KR539987; KR752067; KR728517; KR593239; MX223464; MX231725; MX226464; MX223464; MX212991; MX214637; MX237690; MX240845; MYMY-123159-A; MYMY-123159-A; NL1020077; NL1198959; NL1080584;

NL900498; NL1020077; NZ503280; NZ507789; NZ503280; NZ532122; PT1010077; PT1198959; PT1080584; PT900498; PT1010077; RU2195084; RU2216121; RU2251821; RU2195084; RU2208301; RU2258252; SE1020077; SE1198959; SE1080584; SE900498; SE1020077; SG71485; SG76965; SG86547; SG76964; SG71485; TWNI117461; TWNI-124303; TWNI-130428; TWNI1600674; TWNI-162661; TWNI-202640; TWNI117461; TWNI-130754; and TWNI-184111.

**KUDELSKI GROUP**

7.     Kudelski S.A. d/b/a Kudelski Group is a Swiss corporation, having its principal place of business at Route De Genéve 22-24, Cheseaux-Sur-Lausanne, Vaud, 1033 Switzerland. Kudelski S.A. can be served with process through its U.S. subsidiary, NexGuard Labs USA, Inc. or through the Texas Secretary of State. Kudelski Group does business in the State of Texas and in the Eastern District of Texas.

8.     NexGuard Labs USA, Inc. is a Delaware corporation, having its principal place of business at 252 West 38th Street, Suite 1402, New York, NY 10018. NexGuard Labs USA, Inc. can be served with process through its registered agent, Vcorp Services, LLC, located at 1013 Centre Road, Suite 403-B, Wilmington, DE 19805. NexGuard Labs USA, Inc. does business in the State of Texas and in the Eastern District of Texas.  Specifically, NexGuard Labs USA, Inc. encodes and decodes video content using infringing watermarking technologies for end users and content providers in the Eastern District of Texas.

9.     NexGuard Labs Netherlands B.V. is a Dutch limited liability company, having its principal place of business at High Tech Campus 9, 5656 AE Eindhoven, Netherlands. NexGuard Labs Netherlands B.V. does business in the State of Texas and in the Eastern District of Texas through encoding and decoding video content using infringing watermarking technologies for end users and content providers located in the Eastern District of Texas.

10.    Civolution USA, Inc. is a Delaware corporation, having its principal place of business at 499 7th Avenue, 22nd Floor South, New York, New York 10018.  Civolution USA,

Inc. can be served with process through its registered agent, Corporation Service Company, located at 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808.  Civolution USA, Inc. does business in the State of Texas and in the Eastern District of Texas through encoding and decoding video content using infringing watermarking technologies.

### JURISDICTION AND VENUE

11.     This action arises under the patent laws of the United States, Title 35 of the United States Code.  Accordingly, this Court has exclusive subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338(a).

12.     Upon information and belief, this Court has personal jurisdiction over Kudelski Group in this action because Kudelski Group has committed acts within the Eastern District of Texas giving rise to this action and has established minimum contacts with this forum such that the exercise of jurisdiction over Kudelski Group would not offend traditional notions of fair play and substantial justice.  Kudelski Group, directly and/or through subsidiaries or intermediaries (including distributors, retailers, and others), has committed and continues to commit acts of infringement in this District by, among other things, offering to sell and selling products and/or services that infringe the patents-in-suit.  In addition, subsidiaries of the Kudelski Group are registered to do business in the State of Texas.

13.     Venue is proper in this district under 28 U.S.C. §§ 1391(b)-(d) and 1400(b). Kudelski Group is registered to do business in Texas, and upon information and belief, has transacted business in the Eastern District of Texas and has committed acts of direct and indirect infringement in the Eastern District of Texas.

### MOV INTELLIGENCE'S LANDMARK INVENTIONS

14.     The groundbreaking inventions in DRM and digital watermarking taught in the patents-in-suit were pioneered by Rovi.  Rovi, established in 1983 under the name Macrovision, was a trailblazing technology company focused on inventing and bringing to market fundamental technologies designed to allow producers and distributors of film and music to widely distribute

their products while simultaneously protecting their art from unauthorized copying.[4] Macrovision's copy protection technology became so important to content creators that Congress specifically regulated the manufacture and sale of technology that was incompatible with Macrovision's copy protection technology. *See* 17 U.S.C. § 1201(k)(1) ("unless such recorder conforms to the automatic gain control copy control technology").[5] Rovi broadened its focus to include copy protection and DRM for other media,[6] including computer executables, firmware, operating system images, watermarking, and encryption.

15.     MOV Intelligence's patent portfolio, which includes more than 233 issued patents worldwide, is a direct result of Rovi's substantial investment in research and development. The asserted MOV Intelligence patents are reflective of this history of innovation, embodying a number of firsts in the development of DRM and watermarking technologies.

16.     MOV Intelligence long-term financial success depends in part on its ability to establish, maintain, and protect its proprietary technology through patents. Defendant's infringement presents significant and ongoing damage to MOV Intelligence's business. Kudelski Group, in an effort to expand its product base and profit from the sale of patented technology, has chosen to incorporate MOV Intelligence's fundamental technology without a license or payment.

---

[4] Aljean Harmetz, *Cotton Club Cassettes Coded to Foil Pirates*, N.Y. TIMES (April 24, 1985).

[5] *See also* David Nimmer, *Back from the Future: A Proleptic Review of the Digital Millennium Copyright Act*, 16 BERKELEY TECH. L.J. 855, 862 (2001) (The DMCA "contains a welter of corporation-specific features, relating to Macrovision Corp. The features in question relate to section 1201's controls on consumer analog devices.") (citations omitted).

[6] *See* Michael Arnold et al., TECHNIQUES AND APPLICATIONS OF DIGITAL WATERMARKING AND CONTENT PROTECTION 203 (2002) (Describing Rovi's Cactus Data Shield product which by 2002 had been used in over 100 million compact discs. "This scheme [Rovi Cactus Data Shield] operates by inserting illegal data values instead of error-correcting codes."); *see also Rovi SafeDisc Copy Protection Overview*, MACROVISION CORPORATION DATASHEET at 2 (1999) ("SafeDisc incorporates a unique authentication technology that prevents the re-mastering of CD-ROM titles and deters attempts to make unauthorized copies. The SafeDisc authentication process ensures that consumers will only be able to play original discs. The user is forced to purchase a legitimate copy."); Kirby Kish, MACROSAFE SYSTEM: A SOLUTION FOR SECURE DIGITAL MEDIA DISTRIBUTION at 7 (January 2002) (showing the architecture of the MacroSafe system and use of a DRM Server and Key Escrow Server).

## THE ASSERTED PATENTS

### U.S. PATENT NO. 6,553,127

17.     U.S. Patent No. 6,553,127 (the "'127 patent"), entitled "Method and Apparatus for Selective Block Processing," was filed on November 18, 1998, and claims priority to May 20, 1998.  MOV Intelligence is the owner by assignment of the '127 patent.  A true and correct copy of the '127 patent is attached hereto as Exhibit A.  The '127 patent claims specific methods and systems for embedding and detecting a watermark in a data stream.

18.     The '127 patent has been cited by over 140 issued United States patents and published patent applications as relevant prior art.  Specifically, patents issued to the following companies have cited the '127 patent as relevant prior art:

- Koninklijke Philips Electronics N.V.
- Verance Corporation
- Digimarc Corporation
- Microsoft Corporation
- Oki Electric Industry Co., Ltd.
- Matsushita Electric Industrial Co., Ltd.
- Hitachi, Ltd.
- Sony Corporation
- Canon Kabushiki Kaisha
- NEC Corporation
- Arbitron, Inc.
- Civolution B.V.
- General Instrument Corporation
- Sandisk Technologies, Inc.
- Marvell International Technology, Ltd.
- Fujitsu Limited
- Thomson Licensing, LLC
- Mediatek, Inc.
- Hewlett-Packard Development Company, L.P.

19.     The '127 patent claims a technical solution to a problem unique to the transmission of digital information over a network: reliably embedding and detecting watermarks or other similar hidden messages or symbols in digital data streams.

## U.S. PATENT NO. 6,360,000

20.     U.S. Patent No. 6,360,000 (the "'000 patent"), entitled "Method and Apparatus for Watermark Detection for Specific Scales and Arbitrary Shifts," was filed on November 9, 1998.  MOV Intelligence is the owner by assignment of the '000 patent.  A true and correct copy of the '000 patent is attached hereto as Exhibit B.  The '000 patent claims specific methods and systems for detecting a watermark in a watermarked video stream, the watermark having been scaled by a scale among a predetermined finite number of scales and shifted by a number of pixels.

21.     The '000 patent has been cited by over 35 issued United States patents and published patent applications as relevant prior art.  Specifically, patents issued to the following companies have cited the '000 patent as relevant prior art:

- Lucent Technologies, Inc.
- Hitachi Ltd.
- Digimarc Corporation
- Sony Corporation
- Koninklijke Philips Electronics, N.V.
- Arbitron, Inc.
- Enroute, Inc.
- Canon Kabushiki Kaisha

22.     The '000 patent claims a technical solution to a problem unique to the transmission of digital information over a network: providing systems and methods that detect watermarks embedded in video streams having undergone an unknown scaling among a predetermined and finite number of known scales.

## U.S. PATENT NO. 8,014,524

23.     U.S. Patent No. 8,014,524 (the "'524 patent"), entitled "Scaling Independent Technique for Watermarking Images with Recorder Shut-off," was filed on June 10, 2010, and claims priority to August 6, 1998.  MOV Intelligence is the owner by assignment of the '524 patent.  A true and correct copy of the '524 patent is attached hereto as Exhibit C.  The '524 patent claims specific methods for preventing illicit copying of video information notwithstanding the use of image scaling.  The '524 patent teaches the use of a watermark

embedded into the video signal at different scales (i.e., sizes).  The watermark is maintained at each scale for a predetermined time duration that is sufficient to allow the detector circuit in a device to detect, extract, and process information contained in the watermark.  At the end of the predetermined time duration, the watermark is changed to a different scale on a pseudo-random basis to ensure that each one of all the scales in a predetermined scaling range is achieved a predetermined number of times.

24.     The '524 patent family has been cited by over 91 issued United States patents and published patent applications as relevant prior art.  Specifically, patents issued to the following companies have cited the '524 patent as relevant prior art:

- Verance Corporation
- Koninklijke Philips Electronics N.V.
- Digimarc Corporation
- Deluxe Laboratories, Inc.
- Huawei Technologies Co., Ltd.
- Microsoft Corporation
- LG Electronics, Inc.
- Thomson Licensing
- Robert Bosch GmbH
- International Business Machines Corporation

25.     The '524 patent claims a technical solution to a problem unique to the transmission of digital information over a network.  Changes in the position of a watermark due to image scaling available in recent computer systems and digital playback devices could lead to a watermark to go undetected.  If the watermark is not detected by DVD-recorders, DVHS recorders, and DVCRs, these devices will not automatically shut off to prevent illicit copying thereby rendering the aforementioned method ineffective.

**U.S. PATENT NO. 6,931,536**

26.     U.S. Patent No. 6,931,536 (the "'536 patent"), entitled "Enhanced Copy Protection of Proprietary Material Employing Multiple Watermarks," was filed on March 6, 2001.  MOV Intelligence is the owner by assignment of the '536 patent.  A true and correct copy of the '536 patent is attached hereto as Exhibit D.  The '536 patent claims specific methods and

systems for distributing proprietary material with enhanced copy and play protection.  The '536 patent teaches the use of multiple watermarks for enhanced copy protection.  The first watermark is to be processed by programmable devices and non-programmable devices that are configured to process the first watermark for copy protection of the proprietary material.  The '536 patent also teaches embedding a second watermark in the digital content material.  The second watermark is processed by non-programmable devices configured to process the second watermark for copy protection of the proprietary material in the event that the first watermark is not detected.

27.     The '536 patent has been cited by over 120 issued United States patents and published patent applications as relevant prior art.  Specifically, patents issued to the following companies have cited the '536 patent as relevant prior art:

- Sanyo Electric Co. Ltd.
- Koninklijke Philips Electronics N.V.
- Verance Corporation
- Digimarc Corporation
- Adobe Systems Incorporated
- Sony Corporation
- Panasonic Corporation
- Interdigital Technology Corporation
- Victor Co of Japan Ltd.
- Primax Electronics Ltd.
- Kabushiki Kaisha Toshiba
- Seiko Epson Corporation

28.     The '536 patent claims a technical solution to a problem unique to the transmission of digital information over a network: providing a method and apparatus for distributing proprietary material with enhanced copy and play protection using multiple embedded watermarks.

## COUNT I
## INFRINGEMENT OF U.S. PATENT NO. 6,553,127

29.     MOV Intelligence references and incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein.

30.     Kudelski Group designs, makes, uses, sells, and/or offers for sale in the United States products and/or services for digital rights management.

31.     Kudelski Group designs, makes, sells, offers to sell, imports, and/or uses the NexGuard File Embedder Version 2.2 and NexGuard Transcoder Plugin (including transcoders integrated into Amberfin – iCR, ATEME Titan File, Colorfront Transcoder, Imagine Communications – StreamZ, Elemental Technologies – Elemental Server, Harmonic/Rhozet – ProMedia Carbon, Rohde & Schwarz – Clipster, ROOT6 - ContentAgent, Telestream – Vantage, Agility (Anystream), and Wohler/RadiantGrid – RadiantWorkers) (collectively, the "Kudelski Group '127 Product(s)").

32.     On information and belief, one or more Kudelski Group subsidiaries and/or affiliates use the Kudelski Group '127 Products in regular business operations.

33.     On information and belief, one or more of the Kudelski Group '127 Products include watermarking technology.

34.     On information and belief, one or more of the Kudelski Group '127 Products enable detecting a watermark embedded in selected blocks of a watermarked data stream having a plurality of data elements.

35.     On information and belief, the Kudelski Group '127 Products are available to businesses and individuals throughout the United States.

36.     On information and belief, the Kudelski Group '127 Products are provided to businesses and individuals located in the Eastern District of Texas.

37.     On information and belief, the Kudelski Group '127 Products enable the detection or placement of a watermark in a data stream.

38.     On information and belief, the Kudelski Group '127 Products comprise a system wherein the watermark is placed in a data stream based on a texture criterion that measures a variation of a selected characteristic associated with each data element of the watermarked data stream.  For example, on information and belief, the Kudelski Group comprises a communication

interface to, and is configured to divide the watermarked data stream into a plurality of equally sized blocks as chosen arbitrarily in the embedding process.

39.    On information and belief, the Kudelski Group '127 Products enable selecting only the blocks that meet substantially similar texture criterion as that used in selecting the blocks for embedding the watermark.

40.    On information and belief, the Kudelski Group '127 Products enable detecting the watermark only in the blocks that were embedded with the watermark and were selected by the selecting step thereby decreasing the time and number of operations necessary to process a given number of blocks.

41.    On information and belief, the Kudelski Group '127 Products enable the placement of a watermark in a data stream wherein the data stream is a video stream.

42.    On information and belief, the Kudelski Group '127 Products enable embedding a watermark in blocks that meet a substantially similar textual criteria.

43.    On information and belief, the Kudelski Group '127 Products contain functionality for embedding a watermark only in portions of the data stream whose spectral energy exceeds a predetermined threshold according to a texture criterion, to create a watermarked data stream.

44.    On information and belief, the Kudelski Group '127 Products enable the detection of a watermark.

45.    On information and belief, the Kudelski Group '127 Products enable dividing a data stream into the selected blocks of substantially similar texture criterion.

46.    On information and belief, one or more of the Kudelski Group '127 Products enable selecting a block of content from a data stream.

47.    On information and belief, Kudelski Group has directly infringed and continues to directly infringe the '127 patent by, among other things, making, using, offering for sale, and/or selling digital content protection technology, including but not limited to the Kudelski Group '127 Products, which include infringing watermarking technologies.  Such products and/or

services include, by way of example and without limitation, the NexGuard File Embedder Version 2.2 and NexGuard Transcoder Plugin (including transcoders integrated into Amberfin – iCR, ATEME Titan File, Colorfront Transcoder, Imagine Communications – StreamZ, Elemental Technologies – Elemental Server, Harmonic/Rhozet – ProMedia Carbon, Rohde & Schwarz – Clipster, ROOT6 - ContentAgent, Telestream – Vantage, Agility (Anystream), and Wohler/RadiantGrid – RadiantWorkers).

48.     By making, using, testing, offering for sale, and/or selling watermarking products and services, including but not limited to the Kudelski Group '127 Products, Kudelski Group has injured MOV Intelligence and is liable to MOV Intelligence for directly infringing one or more claims of the '127 patent, including at least claim 10, pursuant to 35 U.S.C. § 271(a).

49.     On information and belief, Kudelski Group also indirectly infringes the '127 patent by actively inducing infringement under 35 USC § 271(b).

50.     On information and belief, Kudelski Group had knowledge of the '127 patent since at least November 30, 2010.  Kudelski Group subsidiary Civolution B.V. cited the '127 patent in the prosecution of U.S. Patent No. 7,844,072 which as assigned to Civolution B.V. and issued on November 30, 2010.

51.     In the alternative, Kudelski Group has had knowledge of the '127 patent since at least service of this Complaint or shortly thereafter, and on information and belief, Kudelski Group knew of the '127 patent and knew of its infringement, including by way of this lawsuit.

52.     On information and belief, Kudelski Group intended to induce patent infringement by third-party customers and users of the Kudelski Group '127 Products and had knowledge that the inducing acts would cause infringement or was willfully blind to the possibility that its inducing acts would cause infringement.  Kudelski Group specifically intended and was aware that the normal and customary use of the accused products would infringe the '127 patent.  Kudelski Group performed the acts that constitute induced infringement, and would induce actual infringement, with knowledge of the '127 patent and with the knowledge that the induced acts would constitute infringement.  For example, Kudelski

Group provides the Kudelski Group '127 Products that have the capability of operating in a manner that infringe one or more of the claims of the '127 patent, including at least claim 10, and Kudelski Group further provides documentation and training materials that cause customers and end users of the Kudelski Group '127 Products to utilize the products in a manner that directly infringe one or more claims of the '127 patent. By providing instruction and training to customers and end-users on how to use the Kudelski Group '127 Products in a manner that directly infringes one or more claims of the '127 patent, including at least claim 10, Kudelski Group specifically intended to induce infringement of the '127 patent. On information and belief, Kudelski Group engaged in such inducement to promote the sales of the Kudelski Group '127 Products, e.g., through Kudelski Group user manuals, product support, marketing materials, and training materials to actively induce the users of the accused products to infringe the '127 patent. Accordingly, Kudelski Group has induced and continues to induce users of the accused products to use the accused products in their ordinary and customary way to infringe the '127 patent, knowing that such use constitutes infringement of the '127 patent.

53.     The '127 patent is well-known within the industry as demonstrated by the over 140 citations to the '127 patent in published patents and patent applications assigned to technology companies and academic institutions. Several of Kudelski Group's competitors have paid considerable licensing fees for their use of the technology claimed by the '127 patent. In an effort to gain an advantage over Kudelski Group's competitors by utilizing the same licensed technology without paying reasonable royalties, Kudelski Group infringed the '127 patent in a manner best described as willful, wanton, malicious, in bad faith, deliberate, consciously wrongful, flagrant, or characteristic of a pirate.

54.     To the extent applicable, the requirements of 35 U.S.C. § 287(a) have been met with respect to the '127 patent.

55.     As a result of Kudelski Group's infringement of the '127 patent, MOV Intelligence has suffered monetary damages, and seeks recovery in an amount adequate to compensate for Kudelski Group's infringement, but in no event less than a reasonable royalty for

the use made of the invention by Kudelski Group together with interest and costs as fixed by the Court.

## COUNT II
## INFRINGEMENT OF U.S. PATENT NO. 6,360,000

56.     MOV Intelligence references and incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein.

57.     Kudelski Group designs, makes, uses, sells, and/or offers for sale in the United States products and/or services for watermark detection.

58.     Kudelski Group designs, makes, sells, offers to sell, imports, and/or uses the NexGuard File Embedder Version 2.2 and NexGuard Transcoder Plugin (including transcoders integrated into Amberfin – iCR, ATEME Titan File, Colorfront Transcoder, Imagine Communications – StreamZ, Elemental Technologies – Elemental Server, Harmonic/Rhozet – ProMedia Carbon, Rohde & Schwarz – Clipster, ROOT6 - ContentAgent, Telestream – Vantage, Agility (Anystream), and Wohler/RadiantGrid – RadiantWorkers) (collectively, the "Kudelski Group '000 Product(s)").

59.     On information and belief, one or more Kudelski Group subsidiaries and/or affiliates use the Kudelski Group '000 Products in regular business operations.

60.     On information and belief, one or more of the Kudelski Group '000 Products include watermarking technology.

61.     On information and belief, one or more of the Kudelski Group '000 Products enable detecting a watermark embedded in data stream which is scaled by an unknown scale among a predetermined finite number of scales.

62.     On information and belief, the Kudelski Group '000 Products are available to businesses and individuals throughout the United States.

63.     On information and belief, the Kudelski Group '000 Products are provided to businesses and individuals located in the Eastern District of Texas.

64.     On information and belief, the Kudelski Group '000 Products enable the detection or placement of a watermark in a data stream.

65.     On information and belief, the Kudelski Group '000 Products comprise a system wherein the '000 Product divides watermarked data stream into a plurality of equally sized portions each having an offset with respect to a respective watermark.

66.     On information and belief, the Kudelski Group '000 Products enable reading watermarked blocks from the video stream into read blocks of equal size.

67.     On information and belief, the Kudelski Group '000 Products enable accumulating selected portions of the data stream having the same offset into selected bins of the computed number of bins to reinforce the watermark while de-emphasizing the data stream effects.

68.     On information and belief, the Kudelski Group '000 Products enable re-scaling each of the distributed portions of a data stream having the same offset to recover the original data signal dimensions.

69.     On information and belief, the Kudelski Group '000 Products enable combining, by a shifting process corresponding to respective offsets, each of the re-scaled distributed portions into a data accumulated block which exhibits a predetermined quantity representative of the unknown scale.

70.     On information and belief, the Kudelski Group '000 Products contain functionality for detecting a scaled watermark in a data stream.

71.     On information and belief, the Kudelski Group '000 Products contain functionality for detecting a watermark in a data stream.

72.     On information and belief, the Kudelski Group '000 Products enable the reading a watermark from a data stream.

73.     On information and belief, the Kudelski Group '000 Products enable the detection of a watermark where the data stream is subject to an unknown scaling shift.

74.     On information and belief, one or more of the Kudelski Group '000 Products enable detecting a watermark where the data stream has undergone an arbitrary shift.

75.     On information and belief, Kudelski Group has directly infringed and continues to directly infringe the '000 patent by, among other things, making, using, offering for sale, and/or selling digital content protection technology, including but not limited to the Kudelski Group '000 Products, which include infringing watermarking technologies.  Such products and/or services include, by way of example and without limitation, the NexGuard File Embedder Version 2.2 and NexGuard Transcoder Plugin (including transcoders integrated into Amberfin – iCR, ATEME Titan File, Colorfront Transcoder, Imagine Communications – StreamZ, Elemental Technologies – Elemental Server, Harmonic/Rhozet – ProMedia Carbon, Rohde & Schwarz – Clipster, ROOT6 - ContentAgent, Telestream – Vantage, Agility (Anystream), and Wohler/RadiantGrid – RadiantWorkers).

76.     By making, using, testing, offering for sale, and/or selling watermarking products and services, including but not limited to the Kudelski Group '000 Products, Kudelski Group has injured MOV Intelligence and is liable to MOV Intelligence for directly infringing one or more claims of the '000 patent, including at least claim 15, pursuant to 35 U.S.C. § 271(a).

77.     On information and belief, Kudelski Group also indirectly infringes the '000 patent by actively inducing infringement under 35 USC § 271(b).

78.     On information and belief, Kudelski Group had knowledge of the '000 patent since at least service of this Complaint or shortly thereafter, and on information and belief, Kudelski Group knew of the '000 patent and knew of its infringement, including by way of this lawsuit.

79.     On information and belief, Kudelski Group intended to induce patent infringement by third-party customers and users of the Kudelski Group '000 Products and had knowledge that the inducing acts would cause infringement or was willfully blind to the possibility that its inducing acts would cause infringement.  Kudelski Group specifically intended and was aware that the normal and customary use of the accused products would

infringe the '000 patent.  Kudelski Group performed the acts that constitute induced infringement, and would induce actual infringement, with knowledge of the '000 patent and with the knowledge that the induced acts would constitute infringement.  For example, Kudelski Group provides the Kudelski Group '000 Products that have the capability of operating in a manner that infringe one or more of the claims of the '000 patent, including at least claim 15, and Kudelski Group further provides documentation and training materials that cause customers and end users of the Kudelski Group '000 Products to utilize the products in a manner that directly infringe one or more claims of the '000 patent.  By providing instruction and training to customers and end-users on how to use the Kudelski Group '000 Products in a manner that directly infringes one or more claims of the '000 patent, including at least claim 15, Kudelski Group specifically intended to induce infringement of the '000 patent.  On information and belief, Kudelski Group engaged in such inducement to promote the sales of the Kudelski Group '000 Products, e.g., through Kudelski Group user manuals, product support, marketing materials, and training materials to actively induce the users of the accused products to infringe the '000 patent.  Accordingly, Kudelski Group has induced and continues to induce users of the accused products to use the accused products in their ordinary and customary way to infringe the '000 patent, knowing that such use constitutes infringement of the '000 patent.

80.     The '000 patent is well-known within the industry as demonstrated by the over 35 citations to the '000 patent in published patents and patent applications assigned to technology companies and academic institutions.  Several of Kudelski Group's competitors have paid considerable licensing fees for their use of the technology claimed by the '000 patent.  In an effort to gain an advantage over Kudelski Group's competitors by utilizing the same licensed technology without paying reasonable royalties, Kudelski Group infringed the '000 patent in a manner best described as willful, wanton, malicious, in bad faith, deliberate, consciously wrongful, flagrant, or characteristic of a pirate.

81.     To the extent applicable, the requirements of 35 U.S.C. § 287(a) have been met with respect to the '000 patent.

82.     As a result of Kudelski Group's infringement of the '000 patent, MOV Intelligence has suffered monetary damages, and seeks recovery in an amount adequate to compensate for Kudelski Group's infringement, but in no event less than a reasonable royalty for the use made of the invention by Kudelski Group together with interest and costs as fixed by the Court.

**COUNT III**
**INFRINGEMENT OF U.S. PATENT NO. 8,014,524**

83.     MOV Intelligence references and incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein.

84.     Kudelski Group designs, makes, uses, sells, and/or offers for sale in the United States products and/or services for digital content protection

85.     Kudelski Group designs, makes, sells, offers to sell, imports, and/or uses the NexGuard File Embedder Version 2.2 and NexGuard Transcoder Plugin (including transcoders integrated into Amberfin – iCR, ATEME Titan File, Colorfront Transcoder, Imagine Communications – StreamZ, Elemental Technologies – Elemental Server, Harmonic/Rhozet – ProMedia Carbon, Rohde & Schwarz – Clipster, ROOT6 - ContentAgent, Telestream – Vantage, Agility (Anystream), and Wohler/RadiantGrid – RadiantWorkers) (collectively, the "Kudelski Group '524 Product(s)").

86.     On information and belief, one or more Kudelski Group subsidiaries and/or affiliates use the Kudelski Group '524 Products in regular business operations.

87.     On information and belief, one or more of the Kudelski Group '524 Products include watermarking technology.

88.     On information and belief, one or more of the Kudelski Group '524 Products enable embedding a watermark in a data stream.

89.     On information and belief, one or more of the Kudelski Group '524 Products comprise methods that prevent illicit copying of video information notwithstanding that use of image scaling.

90.     On information and belief, the Kudelski Group '524 Products are available to businesses and individuals throughout the United States.

91.     On information and belief, the Kudelski Group '524 Products are provided to businesses and individuals located in the Eastern District of Texas.

92.     On information and belief, the Kudelski Group '524 Products enable the placement of a watermark in a data stream.

93.     On information and belief, the Kudelski Group '524 Products comprise methods for embedding a plurality of watermarks in a data stream.

94.     On information and belief, the Kudelski Group '524 Products perform the step of embedding a watermark, with a watermark embedder, having a first scale selected from a range of scales in the video information for a first time period.

95.     On information and belief, the Kudelski Group '524 Products incorporate methods of copy protection.

96.     On information and belief, the Kudelski Group '524 Products include methods that prevent the circumvention of watermarking copy protection by image scaling.

97.     On information and belief, the Kudelski Group '524 Products include techniques that prevent illicit copying of digital information using image scaling.

98.     On information and belief, the Kudelski Group '524 Products enable, during or at the end of the first time period, embedding a watermark, with the watermark embedder having another scale selected from the range of scales in the video information for a second time period.

99.     On information and belief, the Kudelski Group '524 Products enable the placement of a watermark in a data stream wherein the data stream is a video stream.

100.    On information and belief, the Kudelski Group '524 Products include methods where a second watermark is embedded in the data stream during or at the end of the first time

period.  Further, the '524 Products enable embedding a watermark having another scale selected from the range of scales in the data stream at a second time period.  By repeating these steps using a different scale until each of the scales is used a predetermined number of times; the watermark is restored to a position and size detectable by a typical watermark detector at least the predetermined number of times.

101.    On information and belief, the Kudelski Group '524 Product enables the detection of a watermark by restoring the scale of the watermark.

102.    On information and belief, Kudelski Group has directly infringed and continues to directly infringe the '524 patent by, among other things, making, using, offering for sale, and/or selling digital content protection technology, including but not limited to the Kudelski Group '524 Products, which include infringing watermarking technologies.  Such products and/or services include, by way of example and without limitation, the NexGuard File Embedder Version 2.2 and NexGuard Transcoder Plugin (including transcoders integrated into Amberfin – iCR, ATEME Titan File, Colorfront Transcoder, Imagine Communications – StreamZ, Elemental Technologies – Elemental Server, Harmonic/Rhozet – ProMedia Carbon, Rohde & Schwarz – Clipster, ROOT6 - ContentAgent, Telestream – Vantage, Agility (Anystream), and Wohler/RadiantGrid – RadiantWorkers).

103.    By making, using, testing, offering for sale, and/or selling watermarking products and services, including but not limited to the Kudelski Group '524 Products, Kudelski Group has injured MOV Intelligence and is liable to MOV Intelligence for directly infringing one or more claims of the '524 patent, including at least claims 1 and 28, pursuant to 35 U.S.C. § 271(a).

104.    On information and belief, Kudelski Group also indirectly infringes the '524 patent by actively inducing infringement under 35 USC § 271(b).

105.    On information and belief, Kudelski Group had knowledge of the '524 patent since at least service of this Complaint or shortly thereafter, and on information and belief, Kudelski Group knew of the '524 patent and knew of its infringement, including by way of this lawsuit.

106.     On information and belief, Kudelski Group intended to induce patent infringement by third-party customers and users of the Kudelski Group '524 Products and had knowledge that the inducing acts would cause infringement or was willfully blind to the possibility that its inducing acts would cause infringement.  Kudelski Group specifically intended and was aware that the normal and customary use of the accused products would infringe the '524 patent.  Kudelski Group performed the acts that constitute induced infringement, and would induce actual infringement, with knowledge of the '524 patent and with the knowledge that the induced acts would constitute infringement.  For example, Kudelski Group provides the Kudelski Group '524 Products that have the capability of operating in a manner that infringe one or more of the claims of the '524 patent, including at least claim 1 and 28, and Kudelski Group further provides documentation and training materials that cause customers and end users of the Kudelski Group '524 Products to utilize the products in a manner that directly infringe one or more claims of the '524 patent.  By providing instruction and training to customers and end-users on how to use the Kudelski Group '524 Products in a manner that directly infringes one or more claims of the '524 patent, including at least claims 1 and 28, Kudelski Group specifically intended to induce infringement of the '524 patent.  On information and belief, Kudelski Group engaged in such inducement to promote the sales of the Kudelski Group '524 Products, e.g., through Kudelski Group user manuals, product support, marketing materials, and training materials to actively induce the users of the accused products to infringe the '524 patent.  Accordingly, Kudelski Group has induced and continues to induce users of the accused products to use the accused products in their ordinary and customary way to infringe the '524 patent, knowing that such use constitutes infringement of the '524 patent.

107.     The '524 patent is well-known within the industry as demonstrated by the over 91 citations to the '524 patent in published patents and patent applications assigned to technology companies and academic institutions (*e.g.*, LG Electronics, Inc. and Robert Bosch GmbH). Several of Kudelski Group's competitors have paid considerable licensing fees for their use of the technology claimed by the '524 patent.  In an effort to gain an advantage over Kudelski

Group's competitors by utilizing the same licensed technology without paying reasonable royalties, Kudelski Group infringed the '524 patent in a manner best described as willful, wanton, malicious, in bad faith, deliberate, consciously wrongful, flagrant, or characteristic of a pirate.

108.     To the extent applicable, the requirements of 35 U.S.C. § 287(a) have been met with respect to the '524 patent.

109.     As a result of Kudelski Group's infringement of the '524 patent, MOV Intelligence has suffered monetary damages, and seeks recovery in an amount adequate to compensate for Kudelski Group's infringement, but in no event less than a reasonable royalty for the use made of the invention by Kudelski Group together with interest and costs as fixed by the Court.

### COUNT IV
### INFRINGEMENT OF U.S. PATENT NO. 6,931,536

110.     MOV Intelligence references and incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein.

111.     Kudelski Group designs, makes, uses, sells, and/or offers for sale in the United States products and/or services for enhanced copy protection using multiple watermarks embedded in digital content.

112.     Kudelski Group designs, makes, sells, offers to sell, imports, and/or uses the NexGuard File Embedder Version 2.2; NexGuard Transcoder Plugin (including transcoders integrated into Amberfin – iCR, ATEME Titan File, Colorfront Transcoder, Imagine Communications – StreamZ, Elemental Technologies – Elemental Server, Harmonic/Rhozet – ProMedia Carbon, Rohde & Schwarz – Clipster, ROOT6 - ContentAgent, Telestream – Vantage, Agility (Anystream), and Wohler/RadiantGrid – RadiantWorkers); and NexGuard OTT VOD and TV Everywhere Services (collectively, the "Kudelski Group '536 Product(s)").

113.    On information and belief, one or more Kudelski Group subsidiaries and/or affiliates use the Kudelski Group '536 Products in regular business operations.

114.    On information and belief, one or more of the Kudelski Group '536 Products include watermarking technology.

115.    On information and belief, one or more of the Kudelski Group '536 Products contains functionality using two or more watermarks embedded in digital content for enhanced copy protection.

116.    On information and belief, one or more of the Kudelski Group '536 Products enable detecting a watermark embedded in selected blocks of a watermarked data stream having a plurality of data elements.

117.    On information and belief, the Kudelski Group '536 Products are available to businesses and individuals throughout the United States.

118.    On information and belief, the Kudelski Group '536 Products are provided to businesses and individuals located in the Eastern District of Texas.

119.    On information and belief, the Kudelski Group '536 Products enable the detection or placement of a watermark in data.

120.    On information and belief, the Kudelski Group '536 Products comprise a system wherein a first watermark is to be processed by programmable and non-programmable devices configured to process the first watermark for copy protection of the proprietary material.

121.    On information and belief, the Kudelski Group '536 Products enable looking for and processing the second watermark for copy protection of the proprietary material upon failing to detect the first watermark.

122.    On information and belief, the Kudelski Group '536 Products enable searching for a first watermark embedded in digital content.

123.    On information and belief, the Kudelski Group '536 Products contain functionality wherein if the first watermark is detected, the '536 Products process the first watermark for copy protection of the digital content.  The '536 Products also contain

functionality wherein if the first watermark is not detected, the Kudelski Group '536 Products will search for a second watermark in the digital content.

124.     On information and belief, the Kudelski Group '536 Products enable the processing of a second watermark for copy protection of the digital content if a second watermark is detected.

125.     On information and belief, the Kudelski Group '536 Products enable the detection of a watermark.

126.     On information and belief, Kudelski Group has directly infringed and continues to directly infringe the '536 patent by, among other things, making, using, offering for sale, and/or selling digital content protection technology, including but not limited to the Kudelski Group '536 Products, which include infringing watermarking technologies.  Such products and/or services include, by way of example and without limitation, the NexGuard File Embedder Version 2.2; NexGuard Transcoder Plugin (including transcoders integrated into Amberfin – iCR, ATEME Titan File, Colorfront Transcoder, Imagine Communications – StreamZ, Elemental Technologies – Elemental Server, Harmonic/Rhozet – ProMedia Carbon, Rohde & Schwarz – Clipster, ROOT6 - ContentAgent, Telestream – Vantage, Agility (Anystream), and Wohler/RadiantGrid – RadiantWorkers); and NexGuard OTT VOD and TV Everywhere Services.

127.     By making, using, testing, offering for sale, and/or selling watermarking products and services, including but not limited to the Kudelski Group '536 Products, Kudelski Group has injured MOV Intelligence and is liable to MOV Intelligence for directly infringing one or more claims of the '536 patent, including at least claims 25 and 35, pursuant to 35 U.S.C. § 271(a).

128.     On information and belief, Kudelski Group also indirectly infringes the '536 patent by actively inducing infringement under 35 USC § 271(b).

129.     On information and belief, Kudelski Group had knowledge of the '536 patent since at least service of this Complaint or shortly thereafter, and on information and belief,

Kudelski Group knew of the '536 patent and knew of its infringement, including by way of this lawsuit.

130.    On information and belief, Kudelski Group intended to induce patent infringement by third-party customers and users of the Kudelski Group '536 Products and had knowledge that the inducing acts would cause infringement or was willfully blind to the possibility that its inducing acts would cause infringement.  Kudelski Group specifically intended and was aware that the normal and customary use of the accused products would infringe the '536 patent.  Kudelski Group performed the acts that constitute induced infringement, and would induce actual infringement, with knowledge of the '536 patent and with the knowledge that the induced acts would constitute infringement.  For example, Kudelski Group provides the Kudelski Group '536 Products that have the capability of operating in a manner that infringe one or more of the claims of the '536 patent, including at least claims 25 and 35, and Kudelski Group further provides documentation and training materials that cause customers and end users of the Kudelski Group '536 Products to utilize the products in a manner that directly infringe one or more claims of the '536 patent.  By providing instruction and training to customers and end-users on how to use the Kudelski Group '536 Products in a manner that directly infringes one or more claims of the '536 patent, including at least claims 25 and 35, Kudelski Group specifically intended to induce infringement of the '536 patent.  On information and belief, Kudelski Group engaged in such inducement to promote the sales of the Kudelski Group '536 Products, e.g., through Kudelski Group user manuals, product support, marketing materials, and training materials to actively induce the users of the accused products to infringe the '536 patent.  Accordingly, Kudelski Group has induced and continues to induce users of the accused products to use the accused products in their ordinary and customary way to infringe the '536 patent, knowing that such use constitutes infringement of the '536 patent.

131.    The '536 patent is well-known within the industry as demonstrated by the over 120 citations to the '536 patent in issued patents and published patent applications assigned to technology companies and academic institutions (*e.g.*, Sony Corporation and Sanyo Electric Co.

Ltd.).  Several of Kudelski Group's competitors have paid considerable licensing fees for their use of the technology claimed by the '536 patent.  In an effort to gain an advantage over Kudelski Group's competitors by utilizing the same licensed technology without paying reasonable royalties, Kudelski Group infringed the '536 patent in a manner best described as willful, wanton, malicious, in bad faith, deliberate, consciously wrongful, flagrant, or characteristic of a pirate.

132.    To the extent applicable, the requirements of 35 U.S.C. § 287(a) have been met with respect to the '536 patent.

133.    As a result of Kudelski Group's infringement of the '536 patent, MOV Intelligence has suffered monetary damages, and seeks recovery in an amount adequate to compensate for Kudelski Group's infringement, but in no event less than a reasonable royalty for the use made of the invention by Kudelski Group together with interest and costs as fixed by the Court.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff MOV Intelligence respectfully requests that this Court enter:

A.    A judgment in favor of Plaintiff MOV Intelligence that Kudelski Group has infringed, either literally and/or under the doctrine of equivalents, the '127, '000, '524, and '536 patent;

B.    An award of damages resulting from Kudelski Group's acts of infringement in accordance with 35 U.S.C. § 284;

C.    A judgment and order finding that Defendant's infringement was willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or characteristic of a pirate within the meaning of 35 U.S.C. § 284 and awarding to Plaintiff enhanced damages.

D.      A judgment and order finding that this is an exceptional case within the meaning of 35 U.S.C. § 285 and awarding to Plaintiff its reasonable attorneys' fees against Defendant.

E.      Any and all other relief to which MOV Intelligence may show itself to be entitled.

## JURY TRIAL DEMANDED

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, MOV Intelligence requests a trial by jury of any issues so triable by right.

Dated:  October 5, 2016              Respectfully submitted,


/s/  Dorian S. Berger
Elizabeth L. DeRieux (TX Bar No. 05770585)
D. Jeffrey Rambin (TX Bar No. 00791478)
CAPSHAW DERIEUX, LLP
114 E. Commerce Ave.
Gladewater, Texas 75647
Telephone: 903-845-5770
E-mail: ederieux@capshawlaw.com
E-mail: jrambin@capshawlaw.com


Dorian S. Berger (CA SB No. 264424)
Daniel P. Hipskind (CA SB No. 266763)
BERGER & HIPSKIND LLP
1880 Century Park East, Ste. 815
Los Angeles, CA 95047
Telephone: 323-886-3430
Facsimile: 323-978-5508
E-mail: dsb@bergerhipskind.com
E-mail: dph@bergerhipskind.com

*Attorneys for Marking Object Virtualization Intelligence, LLC*