**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| MARKING OBJECT VIRTUALIZATION INTELLIGENCE, LLC, | |
| *Plaintiff*, | |
| v. | **JURY TRIAL DEMANDED** |
| KUDELSKI S.A. D/B/A KUDELSKI GROUP, NEXGUARD LABS USA, INC., NEXGUARD LABS NETHERLANDS B.V., AND CIVOLUTION USA, INC. | **2:16-cv-01099** |
| *Defendants*. | |

**KUDELSKI S.A. d/b/a KUDELSKI GROUP'S
MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(2), 12(B)(5) AND 12(B)(6)**

# TABLE OF CONTENTS

**Page**

I.     STATEMENT OF THE ISSUES TO BE DECIDED.........................................................1

II.    INTRODUCTION ...........................................................................................................1

III.   BACKGROUND ..............................................................................................................3

       A.    MOVI's Insufficient Service Attempt on Kudelski ...............................................3

       B.    MOVI's Insufficient Allegations of Personal Jurisdiction ...................................4

       C.    Kudelski Has No Contacts With Texas Regarding The Accused Products...........5

       D.    MOVI's Insufficient Allegations In Its Complaint ..............................................6

IV.    THE COURT SHOULD DISMISS MOVI'S COMPLAINT AGAINST
       KUDELSKI FOR INSUFFICIENT SERVICE OF PROCESS.........................................9

       A.    Legal Standards for Service of Process .................................................................9

       B.    Neither Mary Quinn nor VCorp Services Is An Authorized Agent of
             Kudelski, Rendering Service of Process Insufficient Under the Federal
             Rules of Civil Procedure and Texas Long Arm Statute......................................10

       C.    The Hague Convention Applies Under Texas Law So No Service Of
             Process May Be Effectuated On Kudelski Through Service on NexGuard
             Labs USA..............................................................................................................11

V.     THE COURT SHOULD DISMISS MOVI'S CLAIMS AGAINST KUDELSKI
       FOR LACK OF PERSONAL JURISDICTION ..............................................................13

       A.    Legal Standards for Personal Jurisdiction...........................................................13

             1.    General Jurisdiction ..................................................................................15

             2.    Specific Jurisdiction.................................................................................15

       B.    MOVI Fails To Allege Facts Sufficient To Establish Personal Jurisdiction .......16

       C.    Personal Jurisdiction Does Not Lie Over Kudelski ............................................18

             1.    This Court lacks General Personal Jurisdiction over Kudelski ...............18

             2.    This Court lacks Specific Personal Jurisdiction over Kudelski...............19

VI.    THE COURT SHOULD DISMISS MOVI'S CLAIMS AGAINST KUDELSKI
       FOR FAILURE TO STATE A CLAIM ..........................................................................21

       A.    Legal Standards for Pleading Patent Infringement Claims..................................21

       B.    MOVI's Willful Infringement Claims Should Be Dismissed..............................23

             1.    The Complaint Lacks Factual Allegations Supporting a Plausible
                   Inference of Egregious Misconduct by Kudelski.....................................23

             2.    MOVI's Willful Infringement Claims for Counts II-IV Should Be
                   Dismissed Because the Complaint Fails to Allege that Kudelski
                   Had the Requisite Pre-Suit Knowledge of the Asserted Patents.............25

EAST\137974519

**TABLE OF AUTHORITIES**
(continued)

**Page**

C.      MOVI's Indirect Infringement Claims Should Be Dismissed ............................ 26

D.      MOVI's Direct Infringement Claims Should Be Dismissed ............................. 29

VII.   CONCLUSION ............................................................................................................. 30

EAST\137974519

# TABLE OF AUTHORITIES

Page

CASES

*Acceleron, LLC v. Egenera, Inc.*,
    634 F. Supp. 2d 758 (E.D. Tex. 2009) ....................................................................19

*Acosta v. Suomy S.R.L.*,
    No. 2:14-cv-455, 2015 WL 4250422 (S.D. Tex. Jul. 13, 2015) ..............................20

*AFTG-TG LLC v. Nuvoton Tech. Corp.*,
    689 F.3d 1358 (Fed. Cir. 2012)....................................................................13, 16, 21

*Am. Realty Trust, Inc. v. Hamilton Lane Advisors*,
    115 Fed. Appx. 662 (5th Cir. 2004).....................................................................16, 17

*Asahi Metal Indus. Co. v. Super. Ct. of Cal.*,
    480 U.S. 102 (1987)..................................................................................................15

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)............................................................................................ passim

*Ashgari-Kamrani v. United Servs. Auto. Ass'n*,
    No. 2:15-cv-478, 2016 U.S. Dist. LEXIS 48012 (E.D. Va. Mar. 22, 2016)............29

*Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*,
    566 F.3d 1012 (Fed. Cir. 2009)..........................................................................16, 19

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)........................................................................................3, 22, 29

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985)..........................................................................14, 16, 19, 21

*Campbell Pet Co. v. Miale*,
    542 F.3d 879 (Fed. Cir. 2008)..................................................................................16

*Commil USA, LLC v. Cisco Sys., Inc.*,
    135 S. Ct. 1920 (2015)........................................................................................26, 28

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l. Ass'n.*,
    776 F.3d 1343 (Fed. Cir. 2014)................................................................................22

*Daimler AG v. Bauman et al.*,
    134 S. Ct. 746 (2014)................................................................................................15

*Diebold Election Sys. v. AI Tech., Inc.*,
    562 F. Supp. 2d 866 (E.D. Tex. 2008).....................................................................19

EAST\137974519

# TABLE OF AUTHORITIES
(continued)

**Page**

*DSU Med. Corp. v. JMS Co.*,
  471 F.3d 1293 (Fed. Cir. 2006)................................................................................26

*Duarte v. Michelin N. Am., Inc.*,
  No. C-13-CV-50, 2013 U.S. Dist. LEXIS 73862 (S.D. Tex. May 3, 2013)...........................12

*Global-Tech Appliances, Inc. v. SEB S.A.*,
  563 U.S. 754 (2011)..................................................................................26, 28

*Graphic Controls Corp. v. Utah Med. Prods., Inc.*,
  149 F.3d 1382 (Fed. Cir. 1998)..............................................................................14

*Grober v. Mako Prods., Inc.*,
  686 F.3d 1335 (Fed. Cir. 2012).........................................................................16, 19

*Halo Elec., Inc. v. Pulse Elec., Inc.*,
  136 S. Ct. 1923 (2016).................................................................................24, 25

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
  466 U.S. 408 (1984)...................................................................................14, 15

*Hildebrand v. Steck Mfg. Co., Inc.*,
  279 F.3d 1351 (Fed. Cir. 2002)..............................................................................13

*HollyAnne Corp. v. TFT, Inc.*,
  199 F.3d 1304 (Fed. Cir. 1999)........................................................................14, 19

*In re Bill of Lading*,
  681 F.3d 1223 (Fed. Cir. 2012)..............................................................................22

*In re Seagate*,
  497 F. 3d 1360 (Fed. Cir. 2007)..............................................................................25

*Int'l Shoe Co. v. Washington*,
  326 U.S. 310 (1945)...................................................................................14, 15

*Jacobs Chuck Mfg. Co. v. Shandong Weida Mach. Co., Ltd.*,
  2005 WL 3299718 (E.D. Tex. 2005) ........................................................................14

*Jackson v. Tanfoglio Giuseppe, S.R.L.*,
  615 F.3d 579 (5th Cir. 2010) ..............................................................................20

*Macronix Int'l Co. v. Spansion Inc.*,
  4 F. Supp. 3d 797, 798-99 (E.D. Va. 2014) ..................................................................29

-iv-

## TABLE OF AUTHORITIES
(continued)

**Page**

*Marking Object Virtualization Intelligence, LLC v. ARRIS Group Inc. et al*,
    No. 2:16-cv-01045, Dkt. No. 1, ¶¶ 29-55, 152-175 (E.D. Tex. Sept. 22, 2016)......................29

*Marking Object Virtualization Intelligence, LLC v. STMicroelectronics, Inc. et al*,
    No. 2:16-cv-01113, Dkt. No. 1, ¶¶ 27-52, 111-134 (E.D. Tex. Oct. 7, 2016).........................29

*Med. Sols., Inc. v. C Change Surgical LLC*,
    541 F.3d 1136 (Fed. Cir. 2008)..............................................................................................14

*MONEC Holding AG v. Motorola Mobility, Inc.*,
    897 F. Supp. 2d 236 (D. Del. 2012) ……………………………………………………….. 25

*Monkton Ins. Servs., Ltd. v. Ritter*,
    768 F.3d 429 (5th Cir. 2014) ................................................................................................15

*Opticurrent, LLC v. Power Integrations, Inc. et al*,
    No. 2:16-cv-00325-JRG, Dkt. No. 34 (E.D. Tex. Oct. 12, 2016)...........................................25

*Rates Tech. Inc. v. Nortel Networks Corp.*,
    399 F.3d 1302 (Fed. Cir. 2005)..............................................................................................19

*Roberts v. Niekerk*,
    730 S.W.2d 341 (Tex. Ct. App.—Dallas 1987, writ ref'd n.r.e.) ...........................................10

*Sang Young Kim v. Frank Mohn A/S*,
    909 F. Supp. 474 (S.D. Tex. 1995) ...........................................................................10, 12, 13

*Takeda Pharms. U.S.A., Inc. v. W.-Ward Pharm. Corp.*,
    785 F.3d 630 (Fed. Cir. 2015)……………………………………………………………… 27

*Touchscreen Gestures LLC v. Research in Motion Ltd.*,
    No. 6:12-cv-263, 2013 WL 8505349 (E.D. Tex. Mar. 27, 2013) ...............................23, 25, 26

*Ruby Sands LLC v. Am. Nat'l Bank of Texas*,
    No. 2:15-CV-1955-JRG, 2016 WL 3542430 (E.D. Tex. June 28, 2016) ................................22

*U.S. Ethernet Innovations, LLC v. Cirrus Logic, Inc.*,
    No. 6:12-cv-366, 2013 WL 8482270 (E.D. Tex. Mar. 6, 2013) .......................................22, 28

*Volkswagenwerk Aktiengesellschaft v. Schlunck*,
    486 U.S. 694 (1988)..........................................................................................................11, 12

*Webmap Techs., LLC v. Google, Inc.*,
    No. 2:09-cv-343, 2010 WL 3768097 (E.D. Tex. Sept. 10, 2010)...........................................26

# TABLE OF AUTHORITIES
(continued)

**Page**

*Whitney v. L & L Realty Corp.*,
   500 S.W.2d 94 (Tex. 1974)) .................................................................................10

*World-Wide Volkswagen Corp. v. Woodson*,
   444 U.S. 286 (1980)................................................................................14, 15, 16

**STATUTES**

35 U.S.C. § 271(a) .................................................................................................20

Tex. Civ. Prac. & Rem. Code § 17.043 ..........................................................10, 12, 13

Tex. Civ. Prac. & Rem. Code § 17.044 ..................................................................10

Tex. Civ. Prac. & Rem. Code § 17.045 ..............................................................10, 12

**OTHER AUTHORITIES**

Fed. R. Civ. P. 4(f)(1) ...........................................................................................11

Fed. R. Civ. P. 4(f)(1)(B)........................................................................................9

Fed. R. Civ. P. 4(f)(2)(C)(i) ..................................................................................11

Fed. R. Civ. P.4(h) ..............................................................................................11

Fed. R. Civ. P. 4(h)(2)........................................................................................9, 11

Fed. R. Civ. P. 8(a)(2)...........................................................................................21

Fed. R. Civ. P. 12 (b)(2)............................................................................1, 4, 11, 30

Fed. R. Civ. P. 12(b)(5)..............................................................................1, 4, 30

Fed. R. Civ. P. 12(b)(6)....................................................................1, 4, 22, 25, 30

EAST\137974519

## I.   STATEMENT OF THE ISSUES TO BE DECIDED

1.   Whether Plaintiff Marking Object Virtualization Intelligence, LLC's ("MOVI")

claims should be dismissed under Fed. R. Civ. P. 12(b)(5) for improper service of process on

Defendant Kudelski S.A. d/b/a Kudelski Group ("Kudelski").[1]

2.   Whether MOVI's claims should be dismissed under Fed. R. Civ. P. 12 (b)(2) for

lack of personal jurisdiction over Kudelski.

3.   Whether MOVI's claims should be dismissed under Fed. R. Civ. P. 12(b)(6) for

failure to state a claim upon which relief can be granted.

## II.   INTRODUCTION

MOVI filed this patent infringement action against Kudelski, NexGuard Labs USA Inc.,

NexGuard Labs Netherlands B.V., and Civolution USA, Inc.[2] (collectively, "Defendants"),

alleging that Defendants infringe the following four U.S. patents:  6,553,127 ("the '127 patent");

6,360,000 ("the '000 patent"); 8,014,524 ("the '524 patent"); and 6,931,536 ("the '536 patent")

(collectively, "the Asserted Patents.").[3]  (Dkt. No. 1.)  MOVI's claims should be dismissed on

three separate grounds:  (1) lack of sufficient service; (2) lack of personal jurisdiction; and (3)

failure to state a claim on which relief may be granted.

First, MOVI's attempted service of process on Kudelski through an agent for service of

process for NexGuard Labs USA is insufficient service of process; thus, this case should be

dismissed.  MOVI asserts that service of process was properly completed on Kudelski on

---

[1] Kudelski appears solely for the purpose of contesting the sufficiency of service of process in this matter, personal jurisdiction in this matter and the sufficiency of MOVI's pleading.

[2] On October 28, 2016, the Court granted MOVI's motion to dismiss its claims against Civolution USA, Inc. without prejudice.  (Dkt. No. 14.)

[3] The '127 and '536 patents are asserted in Case Nos. 2:16-cv-01045 and 2:16-cv-01113.  MOVI is not asserting the '000 and '524 patents in any other related case.

October 7, 2016, through service of process on Mary Quinn at VCorp Services, NexGuard Labs USA's agent for service of process.  (Dkt. No. 10.)  VCorp Services LLC, located in Wilmington, Delaware, is a purported authorized agent for NexGuard Labs USA.  However, neither Ms. Quinn nor VCorp Services is authorized to receive service on behalf of Kudelski, nor is Ms. Quinn or VCorp Services "in charge of" Kudelski's business in Texas, per Texas's long arm statute for service of process on foreign corporations.  Nor is Kudelski engaged in any business in Texas, through NexGuard or related entities.  Consequently, MOVI's attempted service via Ms. Quinn/VCorp Services is insufficient service of process on a foreign corporation under both the Texas long-arm statute and U.S. Supreme Court precedent that require that the Hague Convention procedures for service of process be followed under these circumstances.  Indeed, MOVI has failed to mail copies of the summons and complaint to Kudelski's office in Switzerland as required under the statute, and even if it had done so, this mailing would trigger the requirements for service of judicial documents under the Hague Convention, a protocol MOVI has failed to follow.  Thus, MOVI's alleged service of process on Kudelski is insufficient as a matter of law, and MOVI's claims against Kudelski should be dismissed.

Second, Kudelski moves to dismiss MOVI's claims against it for lack of personal jurisdiction on the following grounds.  MOVI's Complaint fails to make a *prima facie* showing that this Court has personal jurisdiction over Kudelski.  MOVI's allegations that purport to establish this Court's personal jurisdiction over Kudelski are simply impermissible restatements of legal principles and a handful of conclusory factual allegations that fail to establish even the minimum contacts required to exercise personal jurisdiction in Texas.  In addition, because Kudelski has no relevant contacts with Texas, let alone contacts sufficient to establish either general or specific jurisdiction, MOVI cannot overcome its deficient factual allegations of

2

personal jurisdiction.  Indeed, Kudelski is not incorporated in Texas, it does not have a principal place of business in Texas and it does not have any contacts with Texas involving the accused products named in the Complaint.  Because MOVI does not and cannot point to sufficient acts by Kudelski in Texas to establish personal jurisdiction, MOVI's claims against Kudelski should be dismissed.

Third, MOVI's allegations do not state plausible claims for relief against Kudelski for direct infringement, willful infringement, or inducing infringement and should be dismissed.  In its Complaint, MOVI fails to meet the pleading standards of the Federal Rules of Civil Procedure and the Supreme Court's interpretation thereof in *Twombly* and *Iqbal* with respect to these allegations against Kudelski.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).  MOVI's allegations do not state plausible claims for relief against Kudelski for willful infringement or inducing infringement, as they fail to provide plausible factual allegations supporting essential elements of claims for willfulness and inducement: egregious misconduct, subjective recklessness or knowledge of infringement, specific intent to induce infringement, and pre-suit knowledge of the asserted patents as to Counts II-IV.  MOVI's allegations of direct infringement are similarly deficient because they fail to state *how* each accused product meets the claim limitations.  Nor are MOVI's allegations sufficient to put Kudelski on notice of the bases for MOVI's claims.

For these three separate reasons, the Court should dismiss MOVI's Complaint.

## III.   BACKGROUND

On October 5, 2016, MOVI filed its Complaint for Patent Infringement in this action naming Kudelski as a defendant.  (Dkt. No. 1.)

### A.   MOVI's Insufficient Service Attempt on Kudelski

Defendant Kudelski is a company organized under the laws of Switzerland and located in

3

Cheseaux-sur-Lausanne, Switzerland.  (Beariault Decl., ¶ 3.)[4]  Kudelski does not maintain a

regular place of business in Texas and has not designated an agent for service of process in

Texas or any judicial district of the United States.  (*Id*. at ¶¶ 4, 8.)

A summons was issued on October 6, 2016, to Civolution USA, Inc., Kudelski S.A.,

NexGuard Labs Netherlands B.V., and NexGuard Labs USA, Inc.  (Dkt. No. 7.)  On October 14,

2016, MOVI filed its return of service as to Kudelski, stating that the summons and complaint

had been served on "Mary Quinn, authorized agent, at c/o NexGaurd Labs USA, Inc., VCorp

Services, LLC, 1013 Centre Road, Suite 403-B, Wilmington, DE 19805, who is designated by

law to accept service of process on behalf of Kudelski S.A. d/b/a Kudelski Group, on 10/7/2016

at 8:35 a.m."  (Dkt. No. 10.)

### B.      MOVI's Insufficient Allegations of Personal Jurisdiction

To support its contention that this Court has personal jurisdiction over Kudelski, MOVI

includes only two generic paragraphs in its complaint, listing various legal conclusions and

vague allegations that "Kudelski Group" (which it uses to define the <u>four</u> named defendants) or

its subsidiaries are "selling products and/or services that infringe the patents-in-suit" in the

District.  (Dkt No. 1, Compl., ¶ 12.)  Specifically, MOVI alleges:

> 12. Upon information and belief, this Court has personal jurisdiction over
> Kudelski Group in this action because Kudelski Group has committed acts
> within the Eastern District of Texas giving rise to this action and has
> established minimum contacts with this forum such that the exercise of
> jurisdiction over Kudelski Group would not offend traditional notions of
> fair play and substantial justice. ***Kudelski Group, directly and/or through
> subsidiaries or intermediaries (including distributors, retailers, and
> others), has committed and continues to commit acts of infringement in
> this District by, among other things, offering to sell and selling products
> and/or services that infringe the patents-in-suit.  In addition,
> subsidiaries of the Kudelski Group are registered to do business in the
> State of Texas***.

---

[4] Declaration of Mark Beariault in Support of Kudelski S.A. d/b/a Kudelski Group's Motion to
Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2), 12(b)(5) and 12(b)(6) ("Beariault Decl.").

(*Id.*)(emphasis added).   Additionally, for each of the patents-in-suit, MOVI alleges that "On information and belief, the Kudelski Group [patent-in-suit] Products ***are provided to*** businesses and individuals located in the Eastern District of Texas."  (Dkt. No. 1, ¶¶ 36, 63, 91, 118)(emphasis added).   MOVI identifies the following products as accused:  NexGuard File Embedder Version 2.2 and NexGuard Transcoder Plugin (including transcoders integrated into Amberfin – iCR, ATEME Titan File, Colorfront Transcoder, Imagine Communications – StreamZ, Elemental Technologies – Elemental Server, Harmonic/Rhozet – ProMedia Carbon, Rohde & Schwarz – Clipster, ROOT6 - ContentAgent, Telestream – Vantage, Agility (Anystream), and Wohler/RadiantGrid – RadiantWorkers), and NexGuard OTT VOD and TV Everywhere Services (collectively, the "Accused Products").   (*Id.* at ¶¶ 31, 58, 85, 112.)

Nowhere in its Complaint does MOVI identify any *specific* act, sale, offer for sale, or service *by Kudelski* in Texas that would give rise to personal jurisdiction.  Indeed, MOVI does not allege a single relevant act that can be directly attributed to Kudelski.  Instead, MOVI attempts to establish personal jurisdiction by making the broad, non-specific allegations that (1) Kudelski <u>or</u> its subsidiaries sell infringing products or services, (2) some unnamed "subsidiaries" are registered to do business in the State of Texas; and (3) the accused products are "provided" to businesses and users in the Eastern District of Texas without an allegation as to *who* is providing the products.

### C.    Kudelski Has No Contacts With Texas Regarding The Accused Products

Kudelski, a Swiss company located in Switzerland, does not maintain any contacts with Texas involving any of the Accused Products named by MOVI.  (Beariault Decl., ¶¶ 3, 11.) Specifically, Kudelski does not design, develop, or manufacture any of the Accused Products in Texas.  (*Id*. at ¶ 13.)  Nor does Kudelski advertise, market, sell, offer to sell, trade, import, package or distribute any of the Accused Products in Texas.  (*Id*. at ¶ 14.)  Rather, Kudelski acts

5

primarily as a parent company of certain other entities.  (*Id*. at ¶ 11.)

In addition, Kudelski:  (1) has never had any employees in Texas; (2) has never had any offices located in Texas; (3) has never owned real property in Texas; (4) has never had a designated agent for service of process in Texas; (5) has never maintained telephone numbers, mailing addresses or bank accounts in Texas; and (6) has never been registered to do business in Texas.  (*Id*. at ¶¶ 4-9, 15.)

## D.    MOVI's Insufficient Allegations In Its Complaint

MOVI's Complaint against Kudelski alleges four counts of patent infringement, alleging that Kudelski infringes the '127, '000, '524, and '536 patents directly and indirectly by inducing others' direct infringement.  (*See* Dkt. No. 1, ¶¶ 29-55, 56-82, 83-109, 110-133.)

The Complaint's direct infringement allegations follow a consistent pattern.  The allegation for each patent begins with an assertion that "Kudelski Group designs, makes, uses, sells, and/or offers for sale in the United States products and/or services for digital rights management" followed by a list of accused products collectively named the "Kudelski Group" products for that patent.  (Dkt. No. 1, ¶¶ 30-31, 57-58, 84-85, 111-112.)  The Complaint then recites the individual claims for each of the asserted patents, with the general allegation that the "Kudelski Group" products encompass those claims.  (*Id*. at ¶¶ 33-34, 37-46, 60-61, 64-74, 87-89, 92-101, 114-116, 119-125.)  For example, MOVI alleges in paragraph 48 that Kudelski directly infringes claim 10 of the '127 patent.  (Dkt. No. 1, Ex. A, cl.10.)  A comparison of claim 10 and MOVI's allegations demonstrates how MOVI simply restates the language of the claim in an allegation regarding the unnamed accused product.  Indeed, these allegations fail to tie a specific accused product to a specific claim element or state *how* this accused product performs the claim language.

6

| Language of Claim 10 | MOVI's allegations |
|---|---|
| **A method of detecting a watermark embedded in selected blocks of a watermarked data stream having a plurality of data elements,** | 34.  On information and belief, one or more of the Kudelski Group '127 Products **enable detecting a watermark embedded in selected blocks of a watermarked data stream having a plurality of data elements.**<br><br>37. On information and belief, the Kudelski Group '127 Products **enable the detection or placement of a watermark in a data stream.**<br><br>44.  On information and belief, the Kudelski Group '127 Products **enable the detection of a watermark.** |
| wherein the selected blocks **meet a texture criterion that measures a variation of a selected characteristic associated with each data element of the watermarked data stream** | 38. On information and belief, the Kudelski Group '127 Products comprise a system wherein the watermark is placed in a data stream based on **a texture criterion that measures a variation of a selected characteristic associated with each data element of the watermarked data stream**. … |
| wherein the texture criterion is unrelated to any relationship between corresponding blocks of two different frames, the method comprising: | |
| **dividing the watermarked data stream into a plurality of equally sized blocks as chosen arbitrarily in the embedding process** reflected in the watermarked source data stream (145); | 38. . . .For example, on information and belief, the Kudelski Group comprises a communication interface to, and is configured to **divide the watermarked data stream into a plurality of equally sized blocks as chosen arbitrarily in the embedding proces**s. |
| **selecting only the blocks that meet substantially similar texture criterion as that used in selecting the blocks for embedding the watermark,** wherein the data input to the criterion function comes only from the block being tried for selection; and | 39. On information and belief, the Kudelski Group '127 Products enable **selecting only the blocks that meet substantially similar texture criterion as that used in selecting the blocks for embedding the watermark.** |
| **detecting the watermark only in the blocks that were embedded with the watermark and were selected by the selecting step thereby decreasing the time and number of operations necessary to process a given number of blocks**. | 40. On information and belief, the Kudelski Group '127 Products enable **detecting the watermark only in the blocks that were embedded with the watermark and were selected by the selecting step thereby decreasing the time and number of operations necessary to process a given number of blocks.** |

7

Moreover, each count also includes a willful infringement claim.  Specifically, MOVI's

willful infringement allegations are limited to the following vague and unsupported assertions:

> The '127 patent is well-known within the industry as demonstrated by the
> over 140 citations to the '127 patent in published patents and patent
> applications assigned to technology companies and academic institutions.
> Several of Kudelski Group's competitors have paid considerable licensing
> fees for their use of the technology claimed by the '127 patent. In an effort
> to gain an advantage over Kudelski Group's competitors by utilizing the
> same licensed technology without paying reasonable royalties, Kudelski
> Group infringed the '127 patent in a manner best described as willful,
> wanton, malicious, in bad faith, deliberate, consciously wrongful, flagrant,
> or characteristic of a pirate.

(Dkt. No. 1, ¶ 53.)  The Complaint includes nearly identical claims with respect to the '000, '524

and '536 patents.  (*Id.* at ¶¶ 80, 107, 131.)

In Count II, MOVI also alleges that "[o]n information and belief, Kudelski Group had

knowledge of the '000 patent since at least service of this Complaint or shortly thereafter, and on

information and belief, Kudelski Group knew of the '000 patent and knew of its infringement,

including by way of this lawsuit."[5]  (*Id.* at ¶ 78.)  MOVI includes identical allegations in Counts

III and IV with respect to the '524 and '536 patents.  (*Id.* at ¶¶ 105, 129.)  In Count I, MOVI also

alleges that "[o]n information and belief, Kudelski Group had knowledge of the '127 patent since

at least November 30, 2010.  Kudelski Group subsidiary Civolution B.V. cited the '127 patent in

the prosecution of U.S. Patent No. 7,844,072 which as assigned to Civolution B.V. and issued on

November 30, 2010."  (*Id.* at ¶ 50.)

With respect to induced infringement, MOVI makes the following conclusory allegations

with respect to each asserted patent collectively as to all accused defendants:

> On information and belief, Kudelski Group intended to induce patent
> infringement by third-party customers and users of the Kudelski Group
> '127 Products and had knowledge that the inducing acts would cause
> infringement or was willfully blind to the possibility that its inducing acts

---

[5] MOVI refers to all defendants collectively as "Kudelski Group" in its Complaint.

would cause infringement. Kudelski Group specifically intended and was aware that the normal and customary use of the accused products would infringe the '127 patent. Kudelski Group performed the acts that constitute induced infringement, and would induce actual infringement, with knowledge of the '127 patent and with the knowledge that the induced acts would constitute infringement. For example, Kudelski Group provides the Kudelski Group '127 Products that have the capability of operating in a manner that infringe one or more of the claims of the '127 patent, including at least claim 10, and Kudelski Group further provides documentation and training materials that cause customers and end users of the Kudelski Group '127 Products to utilize the products in a manner that directly infringe one or more claims of the '127 patent. By providing instruction and training to customers and end-users on how to use the Kudelski Group '127 Products in a manner that directly infringes one or more claims of the '127 patent, including at least claim 10, Kudelski Group specifically intended to induce infringement of the '127 patent. On information and belief, Kudelski Group engaged in such inducement to promote the sales of the Kudelski Group '127 Products, e.g., through Kudelski Group user manuals, product support, marketing materials, and training materials to actively induce the users of the accused products to infringe the '127 patent. Accordingly, Kudelski Group has induced and continues to induce users of the accused products to use the accused products in their ordinary and customary way to infringe the '127 patent, knowing that such use constitutes infringement of the '127 patent.

(*Id.* at ¶ 52.)  The Complaint includes identical claims with respect to the '000, '524 and '536 patents.  (*Id.* at ¶¶ 79, 106, 130.)

## IV.   THE COURT SHOULD DISMISS MOVI'S COMPLAINT AGAINST KUDELSKI FOR INSUFFICIENT SERVICE OF PROCESS

### A.   Legal Standards for Service of Process

Rule 4(h)(1)(B) of the Federal Rules of Civil Procedure allows for service of process on a foreign corporation in a judicial district of the United States by "delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and--if the agent is one authorized by statute and the statute so requires--by also mailing a copy of each to the defendant." Fed. R. Civ. P. 4(h)(2).  The Texas long-arm statute designates the secretary of state an agent for service of process "on a nonresident who engages in business in this state, but does

9

not maintain a regular place of business in this state or a designated agent for service of process, in any proceeding that arises out of the business done in this state and to which the nonresident is a party." Tex. Civ. Prac. & Rem. Code Ann. § 17.044.  A nonresident may also be served by serving "the person in charge, at the time of service, of any business in which the nonresident is engaged in this state if the nonresident is not required by statute to designate or maintain a resident agent for service of process." *Id.* at. § 17.043.  If service is made pursuant to either section 17.043 or 17.044, a copy of the process and notice of service must immediately be mailed to the nonresident or the nonresident's principal place of business. *Id.* at § 17.045.  Texas courts "strictly construe the long-arm statute, and consistently conclude that failure to strictly comply with the statute by forwarding a copy of the process to the nonresident defendant as required by section 17.045 deprives the court of jurisdiction over the defendant." *Sang Young Kim v. Frank Mohn A/S*, 909 F. Supp. 474, 479 (S.D. Tex. 1995) (citing *Whitney v. L & L Realty Corp.*, 500 S.W.2d 94 (Tex. 1974)); *Roberts v. Niekerk*, 730 S.W.2d 341 (Tex. Ct. App.—Dallas 1987, writ ref'd n.r.e.)).

> **B.    Neither Mary Quinn nor VCorp Services Is An Authorized Agent of Kudelski, Rendering Service of Process Insufficient Under the Federal Rules of Civil Procedure and Texas Long Arm Statute**

Kudelski has not designated an agent for service of process in Texas or any judicial district of the United States.  (Beariault Decl., ¶ 8.)  Neither Mary Quinn nor VCorp Services is an agent, officer, or otherwise appointed by law to receive service for Kudelski.  (*Id.* at ¶ 15.) Kudelski has not engaged in any relevant business in Texas, and as NexGuard's alleged agent for service of process in Wilmington, Delaware, neither VCorp Services nor Mary Quinn is in charge of any business of Kudelski's in Texas.  (*Id.* at ¶¶4-15.)  Furthermore, MOVI has not offered proof that a copy of the process and notice of the service was immediately mailed to Kudelski by certified mail as required by the statute.  As a result, MOVI has failed to comply

10

with the requirements for service of process, thus depriving the court of jurisdiction under Rule 12(b)(2).

### C.    The Hague Convention Applies Under Texas Law So No Service Of Process May Be Effectuated On Kudelski Through Service on NexGuard Labs USA

Even if MOVI had followed the requirements for service of process under the Texas Long-Arm statute, MOVI must also comply with the requirements of the Hague Convention. Fed. R. Civ. P.4(h) requires that a foreign corporation subject to suit under a common name be served in any manner prescribed by Rule 4(f) for serving an individual, except by personal delivery under 4(f)(2)(C)(i).  Fed. R. Civ. P. 4(h)(2).  Rule 4(f) declares that an individual in a foreign place may be served "by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents."  Fed. R. Civ. P. 4(f)(1).

Article 1 of the Hague Convention defines its scope.  *Volkswagenwerk Aktiengesellschaft v. Schlunck*, 486 U.S. 694, 699 (1988).  It states:  "[t]he present Convention shall apply in all cases, in civil or commercial matters, where there is occasion to transmit a judicial or extrajudicial document for service abroad."  20 U.S.T. 361, T.I.A.S. 6638, Art. 1.  The Court interpreted this language to mean that when documents are transmitted abroad for the purpose of effectuating service of process, which is "a formal delivery of documents that is legally sufficient to charge the defendant with notice of a pending action," the Hague Convention governs. *Volkswagenwerk*, 486 U.S. at 700.

By virtue of the Supremacy Clause, the Hague Convention "pre-empts inconsistent methods of service prescribed by state law in all cases to which it applies."  *Volkswagenwerk*, 486 U.S. at 699.  Because the Hague Convention does not prescribe a standard for what constitutes a legally sufficient formal delivery of judicial documents, the Court reasoned that a

EAST\137974519

state's long-arm statute provides that standard.  *Id*. at 700.  Importantly, "[i]f the internal law of the forum state defines the applicable method of serving process as requiring the transmittal of documents abroad, then the Hague Service Convention applies."  *Id*.  The question is thus whether Texas law requires documents to be transmitted abroad to effectuate service, thus triggering the Hague Convention.

As previously described, Texas's general long-arm statute permits service on foreign corporations on "the person in charge" of business in the state; however, service is only complete when the plaintiff has ***mailed documents abroad***, thereby triggering the Hague Convention per *Volkswagenwerk*.  *Sang Young Kim*, 909 F. Supp. at 479.  Specifically, Section 17.045 of the Texas Civil Practice & Remedies Code states that "[i]f the person in charge of a nonresident's business is served with process under Section 17.043, a copy of the process and notice of the service must be immediately mailed to the nonresident or the nonresident's principal place of business."  Tex. Civ. Prac. & Rem. Code Ann. § 17.045.  Here, because documents must be transmitted abroad to Switzerland for proper service to occur, the Hague Convention governs. *Volkswagenwerk*, 486 U.S. at 700.[6]  This was the conclusion of the Southern District of Texas in *Sang Young Kim* in view of *Volkswagenwerk*.

In *Sang Young Kim*, the plaintiff attempted to serve the defendant through its Houston subsidiary, mailing an additional copy to the nonresident defendant's place of business in Norway.  909 F. Supp. at 478.  The plaintiffs argued that the Hague convention was inapplicable since service through the Defendant's Houston subsidiary was proper under section 17.043 of the Texas long-arm statute.  *Id.* at 479.  The court disagreed and found that "[b]ecause the Defendant

---

[6] The Hague Convention's requirements include sending a request, in proper form, to the relevant country's designated central authority.  *See, e.g.*, *Duarte v. Michelin N. Am., Inc.*, No. C-13-CV-50, 2013 U.S. Dist. LEXIS 73862 at *1, *9 (S.D. Tex. May 3, 2013).

12

in this case could be properly served under Texas law only by transmitting judicial documents to the Defendant abroad, the Hague Convention is applicable."  *Id.*  Further, the Hague Convention requires "signatory countries to designate a central authority to receive requests for service, and require[s] that a request for service of judicial documents and the documents to be served be forwarded to the central authority.  Therefore, by sending a copy of the process directly to the Defendant, the Plaintiff did not comply with the Hague Convention, and the Plaintiff's attempted service is ineffective."  *Id.*

Kudelski, like the defendant in *Sang Young Kim*, does not maintain a regular place of business in Texas and has not designated an agent for service of process.  (Beariault Decl., ¶¶ 4, 8.)  Even if the designated agent for NexGuard Labs USA could be served with process, in place of Kudelski, under Tex. Civ. Prac. & Rem. Code § 17.043 (which it cannot), Kudelski was not properly served because it was not mailed the summons and complaint.  Further, even if MOVI had mailed the summons and complaint to Kudelski, the Hague Convention requirements would have been triggered under the Texas long-arm statute.  Because MOVI has not followed the Hague Convention, service of process is insufficient, and MOVI's claims must be dismissed.

## V.   THE COURT SHOULD DISMISS MOVI'S CLAIMS AGAINST KUDELSKI FOR LACK OF PERSONAL JURISDICTION

### A.   Legal Standards for Personal Jurisdiction

When a nonresident defendant files a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden to demonstrate that sufficient contacts exist for the exercise of personal jurisdiction.  *See, e.g.*, *AFTG-TG LLC v. Nuvoton Tech. Corp.*, 689 F.3d 1358, 1365 (Fed. Cir. 2012).  Federal Circuit law applies in a patent infringement case to determine whether a court's exercise of jurisdiction over the defendant is proper.  *Hildebrand v. Steck Mfg. Co., Inc.*, 279 F.3d 1351, 1354 (Fed. Cir. 2002).

13

Personal jurisdiction over an out-of-state defendant is proper only if it is permitted under (1) the forum state's long-arm statute; and (2) the exercise of that jurisdiction comports with the due process requirements of the U.S. Constitution. *HollyAnne Corp. v. TFT, Inc.*, 199 F.3d 1304, 1307 (Fed. Cir. 1999). The law of the forum governs the first inquiry; federal law governs the second. *Med. Sols., Inc. v. C Change Surgical LLC*, 541 F.3d 1136, 1139 (Fed. Cir. 2008). Consequently, under the first inquiry, the Federal Circuit defers to the relevant court's interpretation of the forum state's long-arm statute. *Graphic Controls Corp. v. Utah Med. Prods., Inc.*, 149 F.3d 1382, 1386 (Fed. Cir. 1998). Because the Supreme Court of Texas has interpreted its state's long-arm statute as coextensive with the limits of due process, the focus of the inquiry is whether exercising personal jurisdiction comports with federal due process. *Jacobs Chuck Mfg. Co. v. Shandong Weida Mach. Co., Ltd.*, 2005 WL 3299718 (E.D. Tex. 2005).

The Due Process Clause prohibits the exercise of jurisdiction over a nonresident defendant unless "the defendant purposefully established 'minimum contacts' in the forum State," (*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)), such that the exercise of jurisdiction does not violate "traditional notions of fair play and substantial justice." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). The "defendant's conduct and connection with the forum State [must be] such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). In determining when it is appropriate to "reasonably anticipate" being drawn into litigation in a foreign court, courts have stated that "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King*, 471 U.S. at 474-75 (citations omitted). When

14

considering whether a defendant has purposefully availed itself of a forum by establishing minimum contacts with that forum, the court considers whether the defendant's contacts give rise to either general or specific jurisdiction. *Helicopteros Nacionales De Colombia v. Hall*, 466 U.S. 408 (1984).

### 1.    General Jurisdiction

A plaintiff seeking to establish general jurisdiction over a defendant corporation must demonstrate that the defendant's "affiliations with the State are so continuous and systematic as to render it essentially at home in the Forum State." *Daimler AG v. Bauman et al.*, 134 S. Ct. 746, 749 (2014) (quotations omitted).  These contacts must be "so substantial and of such a nature as to justify suit [against the defendant] on causes of action arising from dealings entirely distinct from those activities." *Int'l Shoe*, 326 U.S. at 318.  Because general jurisdiction exists over a defendant irrespective of the nature of the claim, "only a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there." *Daimler*, 134 S. Ct. at 760.  The "paradigm all-purpose forums for general jurisdiction are a corporation's place of incorporation and principle place of business." *Id.* at 749.  As such, "a corporation's 'continuous activity of some sort within a state is not enough to support the demand that the corporation be amenable to suits unrelated to that activity.'" *Id*. at 757 (quoting *Int'l Shoe*, 326 U.S. at 318).  Indeed, it is "incredibly difficult to establish general jurisdiction in a forum other than the place of incorporation or principal place of business." *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014).

### 2.    Specific Jurisdiction

Unlike general jurisdiction, specific jurisdiction exists only when the factual basis for the complaint arises out of or relates to the forum and creates a substantial connection with the forum. *Asahi Metal Indus. Co. v. Super. Ct. of Cal.*, 480 U.S. 102, 112-13 (1987); *World-Wide*

15

*Volkswagen Corp.*, 444 U.S. at 292.  To satisfy the due process standard for specific jurisdiction, a defendant must have "fair warning that a particular activity may subject [it] to the jurisdiction of a foreign sovereign." *Burger King*, 471 U.S. at 472.  When a court seeks to exercise specific jurisdiction over out-of-state defendants, the "fair warning" requirement is satisfied "if the defendant has 'purposefully directed' [its] activities at residents of the forum and the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Id*.  This requirement "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person.'" *Id.* at 475.

The Federal Circuit applies a three-part test to determine whether a court may exercise specific jurisdiction:  "(1) whether the defendant purposefully directs activities at the forum's residents; (2) whether the claim arises out of or relates to those activities; and (3) whether assertion of personal jurisdiction is reasonable and fair." *AFTG-TG*, 689 F.3d at 1361.  The plaintiff has the burden of proving prongs one and two of the test. *Grober v. Mako Prods., Inc.*, 686 F.3d 1335, 1346 (Fed. Cir. 2012).

### B.     MOVI Fails To Allege Facts Sufficient To Establish Personal Jurisdiction

At a minimum, a plaintiff must make a *prima facie* showing of personal jurisdiction to survive a motion to dismiss. *See Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1017 (Fed. Cir. 2009).  To make such a showing, MOVI must "demonstrate facts that, if true, would support jurisdiction" over Kudelski. *Campbell Pet Co. v. Miale*, 542 F.3d 879, 888 (Fed. Cir. 2008).  A complaint containing nothing more than "bare formulaic accusation[s]" of personal jurisdiction fails to satisfy the requisite prima facie showing and must be dismissed. *See AFTG-TG*, 689 F.3d at 1365-67; *see also Am. Realty Trust, Inc. v. Hamilton Lane Advisors*, 115 Fed. Appx. 662, n.16 (5th Cir. 2004) (explaining that "bare allegations . . . without factual

16

support do not suffice to establish minimum contacts for personal jurisdiction purposes.").

The jurisdictional allegations contained in MOVI's complaint are insufficient to establish this Court's personal jurisdiction over Kudelski.  The first sentence relied on by MOVI to establish personal jurisdiction contains nothing more than a restatement of the applicable law: Kudelski has "established minimum contacts with this forum such that the exercise of jurisdiction over Kudelski Group would not offend traditional notions of fair play and substantial justice."  (Dkt. No. 1, ¶ 12.)  Such "bare formulaic accusations" are not enough to warrant this Court's exercise of personal jurisdiction over Kudelski.  Likewise, the allegation that "Kudelski Group, directly and/or through subsidiaries or intermediaries (including distributors, retailers, and others), has committed and continues to commit acts of infringement in this District by, among other things, offering to sell and selling products and/or services that infringe the patents-in-suit" (*id.*) cannot save MOVI from its deficient pleading of personal jurisdiction.  Even if accepted as true, these allegations are so vague that it is not clear whether a product or service is being sold, much less what product or service, and whether Kudelski itself, one of its subsidiaries, or an unrelated entity such as a retailer or distributor is engaging in these activities. But perhaps even more importantly, the allegation simply does not state that Kudelski, nor any other defendant, is engaged in any activity, sale, or offer for sale directed at the Eastern District of Texas.  For the same reasons, MOVI's allegation that "the Kudelski Group [patent-in-suit] Products are provided to businesses and individuals located in the Eastern District of Texas" are insufficient to establish personal jurisdiction as it does not state that Kudelski (or any other defendant) is providing the products.  (Dkt. No. 1, ¶¶ 36, 63, 91, 118.)  And Kudelski has shown that it has no relevant business, involvement, or other contacts in the Eastern District of Texas. (Beariault Decl., ¶¶ 4-14.)

17

Lastly, the final allegation that "subsidiaries of the Kudelski Group are registered to do business in the State of Texas" (Dkt. No. 1, ¶ 12) is unclear at best, does not identify any specific subsidiaries that are registered, and does not state that these subsidiaries are the same ones engaged in the allegedly infringing activities.  Registration to do business in a state is nowhere near as substantial as being incorporated or having a principal place of business in that state, and thus does not rise to the level of systematic and continuous contacts necessary to confer general jurisdiction.  Moreover, even if Kudelski did have a subsidiary registered in Texas, this would not support finding personal jurisdiction over Kudelski as it is a separate foreign corporate entity that itself is not registered to do business in Texas.  (Beariault Decl., ¶ 7.)

As a result, MOVI's failure to make a single factual allegation that can establish either general or specific jurisdiction leads to the conclusion that MOVI's claims against Kudelski should be dismissed.

### C.     Personal Jurisdiction Does Not Lie Over Kudelski

#### 1.     This Court lacks General Personal Jurisdiction over Kudelski

MOVI does not make any factual allegations claiming that Kudelski has "continuous and systematic" contacts with the State of Texas that support a finding of general jurisdiction.  Not only does MOVI fail to make a *prima facie* showing that this Court has general jurisdiction over Kudelski, but the evidence submitted by Kudelski with this motion shows that MOVI cannot overcome its deficient pleadings.  Kudelski is not incorporated in Texas nor does it have a principal place of business in Texas.  (Beariault Decl., ¶¶ 3-4.)  Moreover, Kudelski does not have the "continuous and systematic" contacts with Texas sufficient to render it "at home" in the State.  In fact, Kudelski (i) does not have offices located in Texas; (ii) does not own real property in Texas; (iii) is not registered to do business in Texas; (iv) does not have a designated agent for service of process in Texas; or (v) does not maintain telephone numbers, mailing addresses or

18

bank accounts in Texas.  (*Id*. at ¶¶ 4, 6-9.)  As a result, Kudelski has no approximate physical presence in the Eastern District of Texas, and thus the Court should find that it lacks general jurisdiction over Kudelski.  *See Acceleron, LLC v. Egenera, Inc*., 634 F. Supp. 2d 758, 769-70 (E.D. Tex. 2009) (granting the defendants' motion to dismiss for lack of personal jurisdiction because the plaintiff failed to make a *prima facie* showing of personal jurisdiction); *Diebold Election Sys. v. AI Tech., Inc.*, 562 F. Supp. 2d 866, 876 (E.D. Tex. 2008) (finding lack of general jurisdiction because "none of the Defendants ha[d] the amount and quality of contacts that would even approach the ballpark of 'continuous and systematic'").

## 2.  This Court lacks Specific Personal Jurisdiction over Kudelski

This Court also does not have specific jurisdiction over Kudelski.  Specific jurisdiction "must be based on activities that arise out of or relate to the case of action."  *Autogenomics*, 566 F.3d at 1017; *Burger King*, 471 U.S. at 476.  MOVI has the burden of proving the first two prongs.  Only if MOVI meets its burden of proof does the burden shift to Kudelski to show that the exercise of personal jurisdiction is not reasonable and fair.  *Grober*, 686 F.3d at 1346.  MOVI has not met and cannot meet its burden.

Patent infringement occurs when a party "without authority makes, uses, offers to sell or sells any patented invention."  *HollyAnne Corp. v. TFT, Inc*., 199 F.3d 1304, 1308 (Fed. Cir. 1999) (citing 35 U.S.C. § 271(a)).  Thus, MOVI must present some evidence that Kudelski engaged in one of those activities purposefully directed at Texas with respect to the accused products.  *Id*.; *Grober*, 686 F.3d at 1346-47 (finding no specific jurisdiction in a patent infringement case where the defendant never shipped the accused products to California); *see also Rates Tech. Inc. v. Nortel Networks Corp*., 399 F.3d 1302, 1306 (Fed. Cir. 2005) (affirming dismissal of a foreign holding company for a lack of personal jurisdiction where there was no evidence that the holding company "made, used, sold, or offered to sell the accused products").

19

For the reasons discussed above, MOVI makes two unsupported factual allegations:  (1) Kudelski and/or its subsidiaries have "committed and continues to commit acts of infringement in this District by, among other things, offering to sell and selling products and/or services that infringe the patents-in-suit" (Dkt. No. 1, ¶ 12) and (2) "the Kudelski Group [patent-in-suit] Products are provided to businesses and individuals located in the Eastern District of Texas." (Dkt. No. 1, ¶¶ 36, 63, 91, 118.)  Neither of these allegations establish that (1) *Kudelski* directs sales or offers to sale of any particular infringing product or service to residents of the Eastern District of Texas or (2) any activities allegedly undertaken by Kudelski's subsidiaries are related to MOVI's claims of infringement *against Kudelski*.  Furthermore, Kudelski has established that it is not engaged in any purported acts of infringement under 35 U.S.C. § 271(a) because it does not make, use, offer to sell or sell any accused products in Texas, and it does not have any contacts with Texas involving the Accused Products.  (Beariault Decl., ¶¶ 11, 13-14); *see Acosta v. Suomy S.R.L.*, No. 2:14-cv-455, 2015 WL 4250422, at *3 (S.D. Tex. Jul. 13, 2015) (granting motion to dismiss for lack of personal jurisdiction because, *inter alia*, Defendant's affidavit evidence specifically controverted the pleadings) (citing *Jackson v. Tanfoglio Giuseppe, S.R.L.*, 615 F.3d 579, 586 (5th Cir. 2010)).  MOVI cannot salvage its allegations of specific jurisdiction because the facts submitted by Kudelski show that it has no relevant contacts with the State of Texas, and Kudelski has not purposefully directed its activities at the residents of Texas in any way arising out of or relating to MOVI's patent infringing claims, much less contacts that warrant exercise of specific jurisdiction in this case.  Accordingly, the Due Process Clause does not permit the exercise of specific jurisdiction over Kudelski in this case.

Finally, even if this Court were to somehow find MOVI's pleadings sufficient to meet the first two prongs of the three-prong test, it would be unreasonable and unfair for this Court to

20

exercise specific personal jurisdiction over Kudelski.  *See AFTG-TG*, 689 F.3d at 1361.  To determine whether exercising personal jurisdiction would comport with "fair play and substantial justice," courts consider five factors:  (1) the burden on the defendant; (2) the forum's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the states in furthering fundamental substantive social policies.  *Burger King*, 471 U.S. at 477-78.  A balancing of these factors establishes that the exercise of specific personal jurisdiction over Kudelski would not be fair and reasonable.

The first factor weighs heavily against the exercise of personal jurisdiction because Kudelski is based in Switzerland and has no contacts with Texas involving the accused products in this case.  (Beariault Decl., ¶¶ 10-11.)  Therefore, the burden of making Kudelski defend a suit in Texas would be unreasonable and unfair.  The second and third factors also favor a finding that there is no specific personal jurisdiction because the Texas has no interest in adjudicating a baseless claim against a defendant with no relevant contacts with Texas.  The fourth and fifth factors do not apply here because there are no forums competing for the resolution of MOVI's claims.  Thus, in light of these facts and the burden that would needlessly be placed on Kudelski, a finding of specific personal jurisdiction would be unreasonable and unfair.

Consequently, because there is no general or specific personal jurisdiction over Kudelski, the Court should dismiss the claims as to Kudelski.

## VI.  THE COURT SHOULD DISMISS MOVI'S CLAIMS AGAINST KUDELSKI FOR FAILURE TO STATE A CLAIM

### A.  Legal Standards for Pleading Patent Infringement Claims

The Federal Rules require complaints to contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  "A plaintiff's obligation to

21

provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 545 (quotations and modifications omitted).  A motion filed under Rule 12(b)(6) tests the sufficiency of a complaint's factual allegations.  In a patent case, the court analyzes a motion to dismiss for failure to state a claim under the law of the regional circuit, here the Fifth Circuit.  *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l. Ass'n.*, 776 F.3d 1343, 1346 (Fed. Cir. 2014) (*citing In re Bill of Lading*, 681 F.3d 1223, 1331 (Fed. Cir. 2012)).

Claims for willful and indirect infringement are required to meet the pleading threshold governed by the Supreme Court's holdings in *Twombly* and *Iqbal*.  *See In re Bill of Lading*, 681 F.3d at 1336-37 (*citing Twombly*, 550 U.S. 544 (2007) and *Iqbal*, 556 U.S. 662 (2009)); *see also U.S. Ethernet Innovations, LLC v. Cirrus Logic, Inc.*, No. 6:12-cv-366, 2013 WL 8482270, at *3 (E.D. Tex. Mar. 6, 2013) ("[C]laims for indirect infringement or willful infringement must be judged by the pleading standards articulated in *Twombly* and *Iqbal*.").  Prior to December 1, 2015, a plaintiff could avoid dismissal of its claims for direct infringement by complying only with the simpler pleading requirements of Form 18 of the Federal Rules of Civil Procedure. Form 18 required merely "a statement that defendant has been infringing the patent 'by making, selling, and using [the device] embodying the patent.'"  *See In re Bill of Lading*, 681 F.3d at 1334; Fed. R. Civ. P. Form 18.  However, the recent amendments to the Federal Rules abrogated Form 18 and required complaints alleging patent infringement to satisfy the more stringent standard set forth in *Iqbal* and *Twombly*.  *Ruby Sands LLC v. Am. Nat'l Bank of Texas*, No. 2:15-CV-1955-JRG, 2016 WL 3542430, at *2 (E.D. Tex. June 28, 2016) ("Given the abrogation of Rule 84, Form 18 no longer provides a safe harbor for direct infringement claims").

Under the *Twombly* and *Iqbal* analysis, there are two steps in determining whether a

22

pleading is sufficient.  *See Iqbal*, 556 U.S. at 679.  First, a court identifies the allegations that are

not entitled to the presumption of truth, which includes any allegations that are "bare assertions,"

merely "formulaic recitation[s] of elements," or "conclusory."  *Id*. at 679-81.  Second, a court

examines the remaining "factual allegations in [the] complaint to determine if they plausibly

suggest an entitlement to relief."  *Id.* at 681; *see also Touchscreen Gestures LLC v. Research in*

*Motion Ltd.*, No. 6:12-cv-263, 2013 WL 8505349, at *1 (E.D. Tex. Mar. 27, 2013).  To

demonstrate plausibility, a plaintiff must go beyond pleading facts that, when assumed to be true,

are "merely consistent with a defendant's liability," and must instead plead facts sufficient to

permit the "reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*,

556 U.S. at 678 (quotations omitted).  A complaint will not suffice if it "tenders 'naked

assertions' devoid of 'further factual enhancement.'"  *Id.*  Merely pleading the "bare elements of

[a] cause of action" will result in dismissal.  *Id.* at 686.

### B.      MOVI's Willful Infringement Claims Should Be Dismissed

MOVI's allegations of willful infringement should be dismissed because they fail to

allege facts that state a plausible claim for relief.  As an initial matter, the Complaint is entirely

devoid of factual assertions that would plausibly support a conclusion that Kudelski's conduct

constituted willful infringement.  The Complaint also fails to allege that Kudelski had the

requisite pre-suit knowledge of the Asserted Patents with respect to Counts II-IV, which is an

independent basis to dismiss those counts.

### 1.      The Complaint Lacks Factual Allegations Supporting a Plausible Inference of Egregious Misconduct by Kudelski

The Complaint lacks any factual allegations establishing a plausible assertion of willful

infringement.  Relevant factors to a determination of willfulness include: (1) whether the

infringement was "willful, wanton, malicious, bad-faith, deliberate, consciously wrongful,

flagrant," or "characteristic of a pirate"; (2) whether the accused infringer was aware of the asserted patent; (3) whether the accused infringer disregarded information or otherwise acted in a subjectively reckless manner concerning the patented invention and potential infringement; (4) whether the accused infringer copied or designed around the patented invention; and (5) whether the accused infringer obtained an opinion of counsel that the asserted patent is not infringed, invalid, or unenforceable.  *See Halo Elec.*, *Inc. v. Pulse Elec.*, *Inc.*, 136 S. Ct. 1923, 1927 (2016). Enhanced damages are only warranted  in "egregious cases of misconduct beyond typical infringement" and should not be awarded in "garden-variety cases."  *Id*. at 1935.

MOVI purports to assert a willfulness claim by making vague, unsupported claims that: (1) each patent "is well known in the industry," (2) "several" of defendants' competitors "have paid considerable licensing fees" for their use of the technology claimed in the patent; and (3) "[i]n an effort to gain an advantage over Kudelski Group's competitors by utilizing the same licensed technology without paying reasonable royalties, Kudelski Group infringed" the patents "in a manner best described as willful, wanton, malicious, in bad faith, deliberate, consciously, wrongful, flagrant, or characteristic of a pirate."  (Dkt. No. 1, ¶¶ 53, 80, 107, 131.)  MOVI's claims are not sufficient because it does not even distinguish among the various defendants in its willful infringement allegations, instead referring to all defendants collectively as the "Kudelski Group."  Moreover, these allegations do not support a finding that Kudelski had specific knowledge of the patents or that its own conduct would be likely to infringe those patents. Finally, these allegations are far too vague and conclusory (or are restatements of law) and cannot sufficiently show that MOVI is entitled to relief under a claim for willful infringement. *Iqbal*, 556 U.S. at 678 (holding that unsupported legal conclusions are insufficient to defeat a motion to dismiss).

24

**2.      MOVI's Willful Infringement Claims for Counts II-IV Should Be Dismissed Because the Complaint Fails to Allege that Kudelski Had the Requisite Pre-Suit Knowledge of the Asserted Patents**

The Court should dismiss MOVI's willful infringement claims in Counts II-IV because MOVI also fails to plead that Kudelski had the requisite pre-suit knowledge of the Asserted Patents.  Culpability in a willful infringement claim is "measured against the knowledge of the actor at the time of the challenged conduct."  *Halo*, 136 S. Ct. at 1933.  Thus, courts have held that a willfulness claim asserted in the plaintiff's original complaint "must necessarily be grounded exclusively in the accused infringer's pre-filing conduct."  *See In re Seagate*, 497 F. 3d 1360, 1374 (Fed. Cir. 2007) (rev'd on other grounds) (emphasis added); *see also Opticurrent, LLC v. Power Integrations, Inc. et al*, No. 2:16-cv-00325-JRG, Dkt. No. 34, slip. op. at 3 (E.D. Tex. Oct. 12, 2016) (holding that "pre-suit knowledge of the asserted patent is generally required to maintain a claim of willfulness.").  Furthermore, the complaint "must adequately allege 'factual circumstances in which the patents-in-suit [are] called to the attention' of the defendants."  *MONEC Holding*, 897 F. Supp. 2d at 236.  However, Counts II-IV of the Complaint lack any factual allegation of pre-suit knowledge of the Asserted Patents.

In fact, MOVI's allegations in Counts II-IV affirmatively admit that MOVI has not alleged pre-suit knowledge by Kudelski.  MOVI's sole allegation in these counts is that Kudelski became aware of each of the Asserted Patents "since at least service of this Complaint or shortly thereafter."  (Dkt. No. 1, ¶¶ 51, 78, 105, 129.)  This allegation alone cannot serve as the basis for a willful infringement claim; indeed, pre-suit knowledge itself may not be sufficient to prove willfulness.  See *Halo*, 136 S. Ct. at 1936 (Breyer, J. concurring) (stating that willful misconduct does not mean that a court "may award enhanced damages simply because the evidence shows that the infringer knew about the patent and nothing more;" instead, factual circumstances must transform "simple knowledge" into "egregious behavior").  This Court has dismissed willful

25

infringement allegations under Fed. R. Civ. P. 12(b)(6) where only post-filing willfulness was alleged and the plaintiff did not seek a preliminary injunction. *See, e.g.*, *Touchscreen Gestures*, 2013 WL 8505349, at *2 (filing of the complaint does not provide sufficient notice to support post-filing willful infringement claims); *Webmap Techs., LLC v. Google, Inc.*, No. 2:09-cv-343, 2010 WL 3768097, at *3 (E.D. Tex. Sept. 10, 2010) *report and recommendation adopted*, No. 2:09-cv-343, 2010 WL 3835118 (E.D. Tex. Sept. 28, 2010) (dismissing post-filing willfulness claim where plaintiff had not sought a preliminary injunction). MOVI's allegations of post-filing are an independent basis for dismissal of MOVI's willful infringement allegations in Counts II-IV of the Complaint.

### C.    MOVI's Indirect Infringement Claims Should Be Dismissed

For a claim of induced infringement to survive a motion to dismiss, the party's complaint must include facts that show: (1) direct infringement by another; (2) the defendant specifically intended their customers to infringe the patent; and (3) knew that the customer's acts constituted infringement. *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006) ("[I]nducement requires that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement.") (internal quotations omitted); *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 765-66 (2011). The Supreme Court recently made it expressly clear that a claim for induced infringement "can only attach if the ***defendant knew of the patent*** and knew as well that 'the induced acts constitute patent infringement.'" *Commil USA, LLC v. Cisco Sys., Inc.*, 135 S. Ct. 1920, 1926 (2015) (quoting *Global-Tech Appliances*, 131 S. Ct. at 2068)(emphasis added). As the Court emphasized, a claim of induced infringement "requires proof the defendant knew the acts were infringing. And the Court's opinion [in Global Tech] was clear in rejecting any lesser mental state as the standard." *Commil*, 135 S. Ct. at 1928. Yet, the Complaint contains no factual allegations that even hint at the requisite knowledge and

26

specific intent by Kudelski to induce infringement.  The induced infringement claims should therefore be dismissed.

MOVI's allegations regarding inducement state that Kudelski "performed the acts that constitute induced infringement, and would induce actual infringement, with knowledge of the '127 patent and with the knowledge that the induced acts would constitute infringement" because:

> Kudelski Group provides the Kudelski Group '127 Products that have the capability of operating in a manner that infringe one or more of the claims of the '127 patent . . . and Kudelski Group further provides documentation and training materials that cause customers and end users of the Kudelski Group '127 Products to utilize the products in a manner that directly infringe one or more claims of the '127 patent. By providing instruction and training to customers and end-users on how to use the Kudelski Group '127 Products in a manner that directly infringes one or more claims of the '127 patent . . . Kudelski Group specifically intended to induce infringement of the '127 patent. On information and belief, Kudelski Group engaged in such inducement to promote the sales of the Kudelski Group '127 Products, e.g., through Kudelski Group user manuals, product support, marketing materials, and training materials to actively induce the users of the accused products to infringe the '127 patent.

(Dkt. No. 1, ¶¶ 52, 79, 106, 130.)

These conclusory statements are devoid of:  (1) any factual allegation that would support a conclusion that Kudelski had knowledge of or was willfully blind to any infringing conduct; (2) any factual allegation supporting MOVI's bare assertion that Kudelski acted with the requisite specific intent; and (3) as established above, any allegation in Counts II-IV that Kudelski even knew of the '000, '524 and '536 patents before the Complaint was filed.  Such sparse and conclusory allegations are insufficient to support an induced infringement claim.  *See Takeda Pharms. U.S.A.*, 785 F.3d at 630 (providing "a lawful product by lawful means, [even] with the knowledge that an unaffiliated, third party may infringe, cannot, in and of itself, constitute inducement of infringement.") (internal quotation marks omitted); *Core Wireless*, No.

27

14-cv-751, Dkt. No. 60 at p. 7 (recommending grant of motion to dismiss induced infringement because "generic allegations that an alleged infringer provides instructional materials along with the accused products, without more, are insufficient to create a reasonable inference of specific intent for the purposes of an induced infringement claim.").

Indeed, these allegations are very similar to the ones dismissed in *U.S. Ethernet Innovations, LLC.* 2013 WL 8482270, at \*4.  In this case, the plaintiff asserted that the defendant had "actual or constructive knowledge of the asserted patents," supplied "infringing systems and components to its customers," and that customers who "purchase . . . and operate such systems and components thereof in accordance with [defendant's] instructions directly infringe one or more claims." *Id.*  The court held that the plaintiff's complaint "alleges a direct infringer, namely [defendant's] customers, but nevertheless fails to: (1) recite the elements of an inducement claim; and (2) allege any facts that, if taken as true, establish a plausible inference that [defendant] had the specific intent to induce its customers actions, and knowledge that those actions amounted to infringement." *Id.*

Furthermore, MOVI's allegations are primarily legal conclusions, and they do no more than recite the required elements for a claim of induced infringement.  Such "'naked assertion[s]' devoid of 'further factual enhancement'" should be disregarded when assessing the sufficiency of a claim.  *Iqbal*, 556 U.S. at 678.  MOVI's Complaint thus fails to adequately plead a factual basis for the requisite knowledge and specific intent to induce infringement.  *Global-Tech*, 131 S. Ct. at 2067 (stating that "[t]he inducement rule ... premises liability on purposeful, culpable expression and conduct.") (internal citations omitted); *see also Commil*, 135 S. Ct. at 1926.  MOVI's induced infringement claims should therefore be dismissed.

### D.    MOVI's Direct Infringement Claims Should Be Dismissed

MOVI's Complaint has not alleged sufficient facts to state a plausible claim of patent

infringement because it does not permit a court to infer that any specific accused product

infringes each element of at least one claim.  *Iqbal*, 556 U.S. at 678; *see also Atlas IP, LLC*, No.

15-C-10746, Slip op. at 9 (dismissing complaint because "factual allegations that do not permit a

court to infer that the accused product infringes each element of at least one claim are not

suggestive of infringement"); *Macronix Int'l Co. v. Spansion Inc*., 4 F. Supp. 3d 797, 798-99

(E.D. Va. 2014) (requiring complaint to recite "the specific claim or claims which are alleged to

be infringed, and the elements thereof that are alleged to be infringed by the allegedly infringing

product, and how that product is alleged to infringe those elements.").  Further, the Complaint's

threadbare allegations do not provide Kudelski with the "fair notice" required by the Federal

Rules of Civil Procedure.  *Twombly*, 550 U.S. at 555; *see also Ashgari-Kamrani v. United Servs.

Auto. Ass'n*, No. 2:15-cv-478, 2016 U.S. Dist. LEXIS 48012, at *9-10 (E.D. Va. Mar. 22, 2016)

(Holding that fair notice generally requires the complaint to plead facts that "specify which

features of [the accused products] correspond to" each specific claim element).

While lengthy, MOVI's allegations are nothing more than formulaic recitations of the

claim elements for each patent.  As demonstrated above in Section III.D with respect to claim 10

of the '127 patent and MOVI's corresponding allegations, MOVI does not identify *which*

accused product corresponds to *which* claim element, nor does MOVI allege a single fact as to

*how* or *why* these claims are met by any of the accused products.  In fact, every single one of the

direct infringement allegations for the '127 and '536 patents, aside from the list of accused

products, are copied verbatim in two other cases where MOVI asserts the same two patents.  *See*

*Marking Object Virtualization Intelligence, LLC v. ARRIS Group Inc. et al*, No. 2:16-cv-01045,

Dkt. No. 1, ¶¶ 29-55, 152-175 (E.D. Tex. Sept. 22, 2016); *Marking Object Virtualization*

*Intelligence, LLC v. STMicroelectronics, Inc. et al*, No. 2:16-cv-01113, Dkt. No. 1, ¶¶ 27-52, 111-134 (E.D. Tex. Oct. 7, 2016).  In essence, MOVI is copy-pasting its patent infringement allegations from complaint to complaint without adding any further detail about how the specifically accused products in this case meet those asserted claims.  This is little better than submitting copies of the patents in place of the Complaint.  Thus, MOVI's direct infringement claims should be dismissed.

## VII.    CONCLUSION

For the foregoing reasons, this Court should grant Kudelski's motion to dismiss all claims against it under:  (1) Fed. R. Civ. P. 12(b)(5) for insufficient service of process; (2) Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction; and (3) Fed. R. Civ. P. 12(b)(6) for failure to state a claim as to MOVI's direct infringement, indirect infringement and willful infringement allegations.

Dated:  December 12, 2016                   Respectfully submitted,

                                            */s/ John M. Guaragna*
                                            John M. Guaragna
                                            State Bar No.:  TX 24043308
                                            DLA Piper LLP (US)
                                            401 Congress, Suite 2500
                                            Austin, TX 78701
                                            Tel. (512) 457-7000
                                            Fax (512) 457-7001
                                            john.guaragna@dlapiper.com

                                            Mark D. Fowler (*pro hac vice to be filed*)
                                            Carrie Williamson (*pro hac vice to be filed*)
                                            Erik R. Fuehrer
                                            2000 University Avenue
                                            East Palo Alto, CA 94303
                                            Tel. (650) 833-2000
                                            Fax (650) 833-2001

                                            James M. Heintz (*pro hac vice to be filed*)
                                            11911 Freedom Dr.
                                            Reston, VA 20190
                                            Tel. (703) 733-4000
                                            Fax  (703)733-5000

                                            COUNSEL FOR DEFENDANT KUDELSKI
                                            S.A. d/b/a KUDELSKI GROUP

EAST\137974519

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on December 12, 2016, a true and correct copy of the foregoing document was electronically filed with the Clerk of Court using the CM/ECF system, which will automatically send notification of such filing to all attorneys of record.

*/s/ John M. Guaragna*_____
John M. Guaragna
