# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| MARKING OBJECT VIRTUALIZATION INTELLIGENCE, LLC, | |
| Plaintiff, | |
| v. | JURY TRIAL DEMANDED |
| KUDELSKI S.A. D/B/A KUDELSKI GROUP, NEXGUARD LABS USA, INC., NEXGUARD LABS NETHERLANDS B.V., AND CIVOLUTION USA, INC. | 2:16-cv-01099 |
| Defendants. | |

## NEXGUARD LABS USA, INC.'S
## MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(2) AND 12(B)(6)

# TABLE OF CONTENTS

I.      STATEMENT OF THE ISSUES TO BE DECIDED........................................ 1

II.     INTRODUCTION ......................................................................................... 1

III.    BACKGROUND ........................................................................................... 3

        A.    MOVI's Insufficient Allegations of Personal Jurisdiction ................... 3

        B.    NexGuard USA Has Insignificant and Infrequent Contacts With Texas ............. 5

        C.    MOVI's Insufficient Allegations In Its Complaint ............................... 6

IV.    THE COURT SHOULD DISMISS MOVI'S CLAIMS AGAINST NEXGUARD
        USA FOR LACK OF PERSONAL JURISDICTION ...................................... 9

        A.    Legal Standards for Personal Jurisdiction............................................ 9

              1.    General Jurisdiction ................................................................. 10

              2.    Specific Jurisdiction................................................................ 11

        B.    MOVI Fails To Allege Facts Sufficient To Establish Personal Jurisdiction ....... 12

        C.    Personal Jurisdiction Does Not Lie Over NexGuard USA ................... 14

              1.    This Court lacks General Personal Jurisdiction over NexGuard
                    USA............................................................................................. 14

              2.    This Court lacks Specific Personal Jurisdiction over NexGuard
                    USA............................................................................................. 15

V.     THE COURT SHOULD DISMISS MOVI'S CLAIMS AGAINST NEXGUARD
        USA FOR FAILURE TO STATE A CLAIM ............................................... 18

        A.    Legal Standards for Pleading Patent Infringement Claims.................. 18

        B.    MOVI's Willful Infringement Claims Should Be Dismissed.............. 20

              1.    The Complaint Lacks Factual Allegations Supporting a Plausible
                    Inference of Egregious Misconduct by NexGuard USA. ........ 20

              2.    MOVI's Willful Infringement Claims for Counts II-IV Should Be
                    Dismissed Because the Complaint Fails to Allege that NexGuard
                    USA Had the Requisite Pre-Suit Knowledge of the Asserted
                    Patents......................................................................................... 21

        C.    MOVI's Indirect Infringement Claims Should Be Dismissed............. 23

        D.    MOVI's Direct Infringement Claims Should Be Dismissed. ............. 25

VI.    CONCLUSION............................................................................................. 26

# TABLE OF AUTHORITIES

**Page**

## CASES

Acceleron, LLC v. Egenera, Inc.,
   634 F. Supp. 2d 758 (E.D. Tex. 2009) ..................................................................15

Acosta v. Suomy S.R.L.,
   No. 2:14-cv-455, 2015 WL 4250422 (S.D. Tex. Jul. 13, 2015) .......................16, 17

AFTG-TG LLC v. Nuvoton Tech. Corp.,
   689 F.3d 1358 (Fed. Cir. 2012).........................................................................9, 12, 17

Am. Realty Trust, Inc. v. Hamilton Lane Advisors,
   115 Fed. Appx. 662 (5th Cir. 2004)........................................................................12, 13

Asahi Metal Indus. Co. v. Super. Ct. of Cal.,
   480 U.S. 102 (1987)...........................................................................................11

Ashcroft v. Iqbal,
   556 U.S. 662 (2009)..................................................................................... passim

Ashgari-Kamrani v. United Servs. Auto. Ass'n,
   No. 2:15-cv-478, 2016 U.S. Dist. LEXIS 48012 (E.D. Va. Mar. 22, 2016)...........................26

Autogenomics, Inc. v. Oxford Gene Tech. Ltd.,
   566 F.3d 1012 (Fed. Cir. 2009)........................................................................12, 15

Bell Atl. Corp. v. Twombly,
   550 U.S. 544 (2007).........................................................................2, 18, 19, 26

Burger King Corp. v. Rudzewicz,
   471 U.S. 462 (1985)..................................................................................... passim

Campbell Pet Co. v. Miale,
   542 F.3d 879 (Fed. Cir. 2008)...........................................................................12

Commil USA, LLC v. Cisco Sys., Inc.,
   135 S. Ct. 1920 (2015)....................................................................................23, 25

Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l. Ass'n.,
   776 F.3d 1343 (Fed. Cir. 2014).........................................................................18

Daimler AG v. Bauman et al.,
   134 S. Ct. 746 (2014).......................................................................................11

EAST\137950041

*Diebold Election Sys. v. AI Tech., Inc.*,
    562 F. Supp. 2d 866 (E.D. Tex. 2008) ........................................................................15

*DSU Med. Corp. v. JMS Co.*,
    471 F.3d 1293 (Fed. Cir. 2006) ................................................................................23

*Global-Tech Appliances, Inc. v. SEB S.A.*,
    563 U.S. 754 (2011) ............................................................................................23, 25

*Graphic Controls Corp. v. Utah Med. Prods., Inc.*,
    149 F.3d 1382 (Fed. Cir. 1998) ................................................................................10

*Grober v. Mako Prods., Inc.*,
    686 F.3d 1335 (Fed. Cir. 2012) ......................................................................12, 15, 16

*Halo Elec., Inc. v. Pulse Elec., Inc.*,
    136 S. Ct. 1923 (2016) ....................................................................................20, 21, 22

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
    466 U.S. 408 (1984) ..................................................................................................10

*Hildebrand v. Steck Mfg. Co., Inc.*,
    279 F.3d 1351 (Fed. Cir. 2002) ..................................................................................9

*HollyAnne Corp. v. TFT, Inc.*,
    199 F.3d 1304 (Fed. Cir. 1999) ..............................................................................9, 16

*In re Bill of Lading*,
    681 F.3d 1223 (Fed. Cir. 2012) ................................................................................19

*In re Seagate*,
    497 F. 3d 1360 (Fed. Cir. 2007) ................................................................................22

*Int'l Shoe Co. v. Washington*,
    326 U.S. 310 (1945) ............................................................................................10, 11

*Jacobs Chuck Mfg. Co. v. Shandong Weida Mach. Co., Ltd.*,
    2005 WL 3299718 (E.D. Tex. 2005) ........................................................................10

*Jackson v. Tanfoglio Giuseppe, S.R.L.*,
    615 F.3d 579 (5th Cir. 2010) ....................................................................................17

*Macronix Int'l Co. v. Spansion Inc.*,
    4 F. Supp. 3d 797 (E.D. Va. 2014) ..........................................................................25

EAST\137950041

*Marking Object Virtualization Intelligence, LLC v. ARRIS Group Inc. et al,*
No. 2:16-cv-01045, Dkt. No. 1 (E.D. Tex. Sept. 22, 2016).....................................................26

*Marking Object Virtualization Intelligence, LLC v. STMicroelectronics, Inc. et al,*
No. 2:16-cv-01113, Dkt. No. 1 (E.D. Tex. Oct. 7, 2016) ........................................................26

*Med. Sols., Inc. v. C Change Surgical LLC,*
541 F.3d 1136 (Fed. Cir. 2008)..................................................................................................9

*MONEC Holding AG v. Motorola Mobility, Inc.,*
897 F. Supp. 2d 225 (D. Del. 2012)…………………………………………………………22

*Monkton Ins. Servs., Ltd. v. Ritter,*
768 F.3d 429 (5th Cir. 2014) ...................................................................................................11

*Opticurrent, LLC v. Power Integrations, Inc. et al,*
No. 2:16-cv-00325-JRG, Dkt. No. 34 (E.D. Tex. Oct. 12, 2016)............................................22

*Rates Tech. Inc. v. Nortel Networks Corp.,*
399 F.3d 1302 (Fed. Cir. 2005).................................................................................................16

*Ruby Sands LLC v. Am. Nat'l Bank of Texas,*
No. 2:15-CV-1955-JRG, 2016 WL 3542430 (E.D. Tex. June 28, 2016) ................................19

*Takeda Pharms. U.S.A., Inc. v. W.-Ward Pharm. Corp.,*
785 F.3d 625 (Fed. Cir. 2015)…………………………………………………………… 24

*Touchscreen Gestures LLC v. Research in Motion Ltd.,*
No. 6:12-cv-263, 2013 WL 8505349 (E.D. Tex. Mar. 27, 2013) ......................................19, 22

*U.S. Ethernet Innovations, LLC v. Cirrus Logic, Inc.,*
No. 6:12-cv-366, 2013 WL 8482270 (E.D. Tex. Mar. 6, 2013) ..................................19, 24, 25

*Webmap Techs., LLC v. Google, Inc.,*
No. 2:09-cv-343, 2010 WL 3768097 (E.D. Tex. Sept. 10, 2010)............................................22

*World-Wide Volkswagen Corp. v. Woodson,*
444 U.S. 286 (1980)..............................................................................................................10, 11

### OTHER AUTHORITIES

Fed. R. Civ. P. 8(a)(2)...................................................................................................................18

Fed. R. Civ. P. 12(b)(2).............................................................................................................1, 26

# TABLE OF AUTHORITIES
(continued)

**Page**

Fed. R. Civ. P. 12(b)(6)..................................................................................1, 5, 18, 22, 26

EAST\137950041

# I.	STATEMENT OF THE ISSUES TO BE DECIDED

1.	Whether Plaintiff Marking Object Virtualization Intelligence, LLC's ("MOVI")

claims should be dismissed under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction over

Defendant NexGuard Labs USA, Inc. ("NexGuard USA").[1]

2.	Whether MOVI's claims should be dismissed under Fed. R. Civ. P. 12(b)(6) for

failure to state a claim upon which relief can be granted.

# II.	INTRODUCTION

MOVI filed this patent infringement action against Kudelski, NexGuard Labs USA Inc.,

NexGuard Labs Netherlands B.V., and Civolution USA, Inc.[2] (collectively, "Defendants"),

alleging that Defendants infringe the following four U.S. patents:  6,553,127 ("the '127 patent");

6,360,000 ("the '000 patent"); 8,014,524 ("the '524 patent"); and 6,931,536 ("the '536 patent")

(collectively, "the Asserted Patents.").[3]  (Dkt. No. 1.)  MOVI's claims against NexGuard USA

should be dismissed based on two separate grounds:  (1) lack of personal jurisdiction; and (2)

failure to state a claim on which relief may be granted.

<u>First</u>, NexGuard USA moves to dismiss MOVI's claims against it for lack of personal

jurisdiction on the following grounds.  MOVI's Complaint fails to make a *prima facie* showing

that this Court has personal jurisdiction over NexGuard USA.  MOVI's allegations that purport

to establish this Court's personal jurisdiction over NexGuard USA are simply impermissible

---

[1] NexGuard USA appears solely for the purpose of contesting personal jurisdiction in this matter and the sufficiency of MOVI's pleading.

[2] On October 28, 2016, the Court granted MOVI's motion to dismiss its claims against Civolution USA, Inc. without prejudice.  (Dkt. No. 14.)

[3] The '127 and '536 patents are asserted in Case Nos. 2:16-cv-01045 and 2:16-cv-01113.  MOVI is not asserting the '000 and '524 patents in any other related case.

restatements of legal principles and a handful of conclusory factual allegations that fail to establish even the minimum contacts required to exercise personal jurisdiction in Texas. In addition, because NexGuard USA has no relevant contacts with Texas, let alone contacts sufficient to establish either general or specific jurisdiction, MOVI cannot overcome its deficient factual allegations of personal jurisdiction. Indeed, NexGuard USA is not incorporated in Texas, it does not have a principal place of business in Texas and it does not have any contacts with Texas involving the accused products named in the Complaint. Furthermore, the only contacts NexGuard USA has had with Texas include (1) occasional administrative and technical support communications with a formerly Canadian company recently acquired and relocated to Texas, and (2) two isolated communications with a business lead located in Texas that did not result in a business transaction. Because MOVI does not and cannot point to sufficient acts by NexGuard USA in Texas to establish personal jurisdiction, MOVI's claims against NexGuard USA should be dismissed.

<u>Second</u>, MOVI's allegations do not state plausible claims for relief against NexGuard USA for direct infringement, willful infringement, or inducing infringement and should be dismissed. In its Complaint, MOVI fails to meet the pleading standards of the Federal Rules of Civil Procedure and the Supreme Court's interpretation thereof in *Twombly* and *Iqbal* with respect to these allegations against NexGuard USA. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). MOVI's allegations do not state plausible claims for relief against NexGuard USA for willful infringement or inducing infringement, as they fail to provide plausible factual allegations supporting essential elements of claims for willfulness and inducement: egregious misconduct, subjective recklessness or knowledge of infringement, specific intent to induce infringement, and pre-suit knowledge of the

-2-

asserted patents as to Counts II-IV. MOVI's allegations of direct infringement are similarly deficient because they fail to state *how* each accused product meets the claim limitations. Nor are MOVI's allegations sufficient to put NexGuard USA on notice of the bases for MOVI's claims.

For these two separate reasons, the Court should dismiss MOVI's Complaint.

## III. BACKGROUND

On October 5, 2016, MOVI filed its Complaint for Patent Infringement in this action naming NexGuard USA as a defendant. (Dkt. No. 1.)

### A. MOVI's Insufficient Allegations of Personal Jurisdiction

To support its contention that this Court has personal jurisdiction over NexGuard USA, MOVI includes only two generic paragraphs in its complaint, listing various legal conclusions and vague allegations that "Kudelski Group" (which it uses to define the four named defendants) or its subsidiaries are "selling products and/or services that infringe the patents-in-suit" in the District. (Dkt. No. 1, Compl., ¶ 12.) Specifically, MOVI alleges:

> 12. Upon information and belief, this Court has personal jurisdiction over Kudelski Group in this action because Kudelski Group has committed acts within the Eastern District of Texas giving rise to this action and has established minimum contacts with this forum such that the exercise of jurisdiction over Kudelski Group would not offend traditional notions of fair play and substantial justice. ***Kudelski Group, directly and/or through subsidiaries or intermediaries (including distributors, retailers, and others), has committed and continues to commit acts of infringement in this District by, among other things, offering to sell and selling products and/or services that infringe the patents-in-suit. In addition, subsidiaries of the Kudelski Group are registered to do business in the State of Texas.***

(*Id.* (emphasis added).)

MOVI also alleges that "NexGuard Labs USA, Inc. does business in the State of Texas and in the Eastern District of Texas. Specifically, NexGuard Labs USA, Inc. *encodes and*

*decodes* video content using infringing watermarking technologies for end users and content providers in the Eastern District of Texas." (*Id.* at ¶ 8 (emphasis added).) This language is mirrored in the next two nearly identical paragraphs naming Defendants NexGuard Labs Netherlands B.V. and Civolution USA, Inc. (*Id.* at ¶¶ 9,10.) Additionally, for each of the patents-in-suit, MOVI alleges that "On information and belief, the Kudelski Group [patent-in-suit] Products ***are provided to*** businesses and individuals located in the Eastern District of Texas." (Dkt. No. 1, ¶¶ 36, 63, 91, 118) (emphasis added). MOVI identifies the following products as accused: NexGuard File Embedder Version 2.2 and NexGuard Transcoder Plugin (including transcoders integrated into Amberfin – iCR, ATEME Titan File, Colorfront Transcoder, Imagine Communications – StreamZ, Elemental Technologies – Elemental Server, Harmonic/Rhozet – ProMedia Carbon, Rohde & Schwarz – Clipster, ROOT6 - ContentAgent, Telestream – Vantage, Agility (Anystream), and Wohler/RadiantGrid – RadiantWorkers), and NexGuard OTT VOD and TV Everywhere Services (collectively, the "Accused Products"). (*Id.* at ¶¶ 31, 58, 85, 112.)

Nowhere in its Complaint does MOVI identify any *specific* act, sale, offer for sale, or service *by NexGuard USA* in Texas that would give rise to personal jurisdiction. Indeed, MOVI does not allege a single relevant act that can be directly attributed to NexGuard USA. Instead, MOVI attempts to establish personal jurisdiction by making the broad, non-specific allegations that (1) Kudelski Group <u>or</u> its subsidiaries sell infringing products or services, (2) some unnamed "subsidiaries" are registered to do business in the State of Texas; and (3) the accused products are "provided" to businesses and users in the Eastern District of Texas without an allegation as to *who* is providing the products.

**B.    NexGuard USA Has Insignificant and Infrequent Contacts With Texas**

NexGuard USA is incorporated in the State of Delaware and maintains its only U.S. offices in New York, New York and Burbank, California.  (Tholen Decl., ¶¶ 3-4.)[4]  NexGuard USA has fewer than a dozen employees in the United States, and none of them are located in Texas.  (*Id.* at ¶ 4.)  NexGuard USA does not design, develop, or manufacture any of the Accused Products in the Eastern District of Texas or anywhere in the State of Texas.  (*Id.* at ¶ 13.)  NexGuard USA also does not sell the Accused Products anywhere in the State of Texas, does not contract with any customer purchasing a NexGuard product in the United States, and does not conclude any sales of NexGuard products.  (*Id.* at ¶¶ 10, 12, 14.)  Instead, NexGuard USA acts as a marketing and technical support and maintenance company for certain NexGuard products sold in the United States.  (*Id.* at ¶ 11.)  NexGuard USA does not encode or decode video content in the Eastern District of Texas or anywhere in the State of Texas.  (*Id.* at ¶ 15.)

In addition, NexGuard USA:  (1) has never had any offices located in Texas; (2) has never owned real property in Texas; (3) has never had a designated agent for service of process in Texas; (4) has never maintained telephone numbers, mailing addresses or bank accounts in Texas; and (5) has never been registered to do business in Texas.  (*Id.* at ¶¶ 5-9.)

NexGuard USA's totality of contacts with the State of Texas relate to two trivial matters.  The first matter involves infrequent administrative and technical support communications with a company located in Texas.  (*Id.* at ¶ 16.)  These communications were the inherited result of a relationship formed by one of NexGuard USA's predecessors with a Canadian company that was later acquired and relocated to Texas.  (*Id.*)  The second matter involves one phone call and one email with a potential business lead in Texas that did not result in a business transaction.  (*Id.*)

---

[4] Declaration of Harrie Tholen in Support of NexGuard USA's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6) ("Tholen Decl.").

## C.    MOVI's Insufficient Allegations In Its Complaint

MOVI's Complaint against NexGuard USA alleges four counts of patent infringement, alleging that NexGuard USA infringes the '127, '000, '524, and '536 patents directly and indirectly by inducing others' direct infringement.  (*See* Dkt. No. 1, ¶¶ 29-55, 56-82, 83-109, 110-133.)

The Complaint's direct infringement allegations follow a consistent pattern.  The allegation for each patent begins with an assertion that "Kudelski Group designs, makes, uses, sells, and/or offers for sale in the United States products and/or services for digital rights management" followed by a list of accused products collectively named the "Kudelski Group" products for that patent.  (Dkt. No. 1, ¶¶ 30-31, 57-58, 84-85, 111-112.)  The Complaint then recites the individual claims for each of the asserted patents, with the general allegation that the "Kudelski Group" products encompass those claims.  (*Id.* at ¶¶ 33-34, 37-46, 60-61, 64-74, 87-89, 92-101, 114-116, 119-125.)  For example, MOVI alleges in paragraph 48 that NexGuard USA directly infringes claim 10 of the '127 patent.  (Dkt. No. 1, Ex. A, cl.10.)  A comparison of claim 10 and MOVI's allegations demonstrates how MOVI simply restates the language of the claim in an allegation regarding the unnamed accused product.  Indeed, these allegations fail to tie a specific accused product to a specific claim element or state *how* this accused product performs the claim language.

| Language of Claim 10 | MOVI's allegations |
|---|---|
| **A method of detecting a watermark embedded in selected blocks of a watermarked data stream having a plurality of data elements,** | 34.  On information and belief, one or more of the Kudelski Group '127 Products **enable detecting a watermark embedded in selected blocks of a watermarked data stream having a plurality of data elements.** <br><br> 37. On information and belief, the Kudelski Group '127 Products **enable the detection or** |

| | |
|---|---|
| | **placement of a watermark in a data stream.** |
| | 44. On information and belief, the Kudelski Group '127 Products **enable the detection of a watermark.** |
| wherein the selected blocks **meet a texture criterion that measures a variation of a selected characteristic associated with each data element of the watermarked data stream** | 38. On information and belief, the Kudelski Group '127 Products comprise a system wherein the watermark is placed in a data stream based on **a texture criterion that measures a variation of a selected characteristic associated with each data element of the watermarked data stream.** … |
| wherein the texture criterion is unrelated to any relationship between corresponding blocks of two different frames, the method comprising: | |
| **dividing the watermarked data stream into a plurality of equally sized blocks as chosen arbitrarily in the embedding process** reflected in the watermarked source data stream (145); | 38. . . .For example, on information and belief, the Kudelski Group comprises a communication interface to, and is configured to **divide the watermarked data stream into a plurality of equally sized blocks as chosen arbitrarily in the embedding proces**s. |
| **selecting only the blocks that meet substantially similar texture criterion as that used in selecting the blocks for embedding the watermark,** wherein the data input to the criterion function comes only from the block being tried for selection; and | 39. On information and belief, the Kudelski Group '127 Products enable **selecting only the blocks that meet substantially similar texture criterion as that used in selecting the blocks for embedding the watermark.** |
| **detecting the watermark only in the blocks that were embedded with the watermark and were selected by the selecting step thereby decreasing the time and number of operations necessary to process a given number of blocks**. | 40. On information and belief, the Kudelski Group '127 Products enable **detecting the watermark only in the blocks that were embedded with the watermark and were selected by the selecting step thereby decreasing the time and number of operations necessary to process a given number of blocks.** |

Moreover, each count also includes a willful infringement claim. Specifically, MOVI's

willful infringement allegations are limited to the following vague and unsupported assertions:

> The '127 patent is well-known within the industry as demonstrated by the over 140 citations to the '127 patent in published patents and patent applications assigned to technology companies and academic institutions. Several of Kudelski Group's competitors have paid considerable licensing

-7-

fees for their use of the technology claimed by the '127 patent. In an effort to gain an advantage over Kudelski Group's competitors by utilizing the same licensed technology without paying reasonable royalties, Kudelski Group infringed the '127 patent in a manner best described as willful, wanton, malicious, in bad faith, deliberate, consciously wrongful, flagrant, or characteristic of a pirate.

(Dkt. No. 1, ¶ 53.) The Complaint includes nearly identical claims with respect to the '000, '524 and '536 patents. (*Id.* at ¶¶ 80, 107, 131.)

In Count II, MOVI also alleges that "[o]n information and belief, Kudelski Group had knowledge of the '000 patent since at least service of this Complaint or shortly thereafter, and on information and belief, Kudelski Group knew of the '000 patent and knew of its infringement, including by way of this lawsuit."[5] (*Id.* at ¶ 78.) MOVI includes identical allegations in Counts III and IV with respect to the '524 and '536 patents. (*Id.* at ¶¶ 105, 129.) In Count I, MOVI also alleges that "[o]n information and belief, Kudelski Group had knowledge of the '127 patent since at least November 30, 2010. Kudelski Group subsidiary Civolution B.V. cited the '127 patent in the prosecution of U.S. Patent No. 7,844,072 which as assigned to Civolution B.V. and issued on November 30, 2010." (*Id.* at ¶ 50.)

With respect to induced infringement, MOVI makes the following conclusory allegations with respect to each asserted patent collectively as to all accused defendants:

On information and belief, Kudelski Group intended to induce patent infringement by third-party customers and users of the Kudelski Group '127 Products and had knowledge that the inducing acts would cause infringement or was willfully blind to the possibility that its inducing acts would cause infringement. Kudelski Group specifically intended and was aware that the normal and customary use of the accused products would infringe the '127 patent. Kudelski Group performed the acts that constitute induced infringement, and would induce actual infringement, with knowledge of the '127 patent and with the knowledge that the induced acts would constitute infringement. For example, Kudelski Group provides the Kudelski Group '127 Products that have the capability of operating in a manner that infringe one or more of the claims of the '127 patent,

---

[5] MOVI refers to all defendants collectively as "Kudelski Group" in its Complaint.

including at least claim 10, and Kudelski Group further provides documentation and training materials that cause customers and end users of the Kudelski Group '127 Products to utilize the products in a manner that directly infringe one or more claims of the '127 patent. By providing instruction and training to customers and end-users on how to use the Kudelski Group '127 Products in a manner that directly infringes one or more claims of the '127 patent, including at least claim 10, Kudelski Group specifically intended to induce infringement of the '127 patent. On information and belief, Kudelski Group engaged in such inducement to promote the sales of the Kudelski Group '127 Products, e.g., through Kudelski Group user manuals, product support, marketing materials, and training materials to actively induce the users of the accused products to infringe the '127 patent. Accordingly, Kudelski Group has induced and continues to induce users of the accused products to use the accused products in their ordinary and customary way to infringe the '127 patent, knowing that such use constitutes infringement of the '127 patent.

(*Id.* at ¶ 52.)  The Complaint includes identical claims with respect to the '000, '524 and '536 patents.  (*Id.* at ¶¶ 79, 106, 130.)

## IV. THE COURT SHOULD DISMISS MOVI'S CLAIMS AGAINST NEXGUARD USA FOR LACK OF PERSONAL JURISDICTION

### A. Legal Standards for Personal Jurisdiction

When a nonresident defendant files a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden to demonstrate that sufficient contacts exist for the exercise of personal jurisdiction.  *See, e.g.*, *AFTG-TG LLC v. Nuvoton Tech. Corp.*, 689 F.3d 1358, 1365 (Fed. Cir. 2012).  Federal Circuit law applies in a patent infringement case to determine whether a court's exercise of jurisdiction over the defendant is proper.  *Hildebrand v. Steck Mfg. Co., Inc.*, 279 F.3d 1351, 1354 (Fed. Cir. 2002).

Personal jurisdiction over an out-of-state defendant is proper only if it is permitted under (1) the forum state's long-arm statute; and (2) the exercise of that jurisdiction comports with the due process requirements of the U.S. Constitution.  *HollyAnne Corp. v. TFT, Inc.*, 199 F.3d 1304, 1307 (Fed. Cir. 1999).  The law of the forum governs the first inquiry; federal law governs the second.  *Med. Sols., Inc. v. C Change Surgical LLC*, 541 F.3d 1136, 1139 (Fed. Cir. 2008).

-9-

Consequently, under the first inquiry, the Federal Circuit defers to the relevant court's interpretation of the forum state's long-arm statute. *Graphic Controls Corp. v. Utah Med. Prods., Inc.*, 149 F.3d 1382, 1386 (Fed. Cir. 1998). Because the Supreme Court of Texas has interpreted its state's long-arm statute as coextensive with the limits of due process, the focus of the inquiry is whether exercising personal jurisdiction comports with federal due process. *Jacobs Chuck Mfg. Co. v. Shandong Weida Mach. Co., Ltd.*, 2005 WL 3299718 (E.D. Tex. 2005).

The Due Process Clause prohibits the exercise of jurisdiction over a nonresident defendant unless "the defendant purposefully established 'minimum contacts' in the forum State," (*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)), such that the exercise of jurisdiction does not violate "traditional notions of fair play and substantial justice." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). The "defendant's conduct and connection with the forum State [must be] such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). In determining when it is appropriate to "reasonably anticipate" being drawn into litigation in a foreign court, courts have stated that "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King*, 471 U.S. at 474-75 (citations omitted). When considering whether a defendant has purposefully availed itself of a forum by establishing minimum contacts with that forum, the court considers whether the defendant's contacts give rise to either general or specific jurisdiction. *Helicopteros Nacionales De Colombia v. Hall*, 466 U.S. 408 (1984).

### 1. General Jurisdiction

A plaintiff seeking to establish general jurisdiction over a defendant corporation must

demonstrate that the defendant's "affiliations with the State are so continuous and systematic as to render it essentially at home in the Forum State." *Daimler AG v. Bauman et al.*, 134 S. Ct. 746, 749 (2014) (quotations omitted). These contacts must be "so substantial and of such a nature as to justify suit [against the defendant] on causes of action arising from dealings entirely distinct from those activities." *Int'l Shoe*, 326 U.S. at 318. Because general jurisdiction exists over a defendant irrespective of the nature of the claim, "only a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there." *Daimler*, 134 S. Ct. at 760. The "paradigm all-purpose forums for general jurisdiction are a corporation's place of incorporation and principle place of business." *Id.* at 749. As such, "a corporation's 'continuous activity of some sort within a state is not enough to support the demand that the corporation be amenable to suits unrelated to that activity.'" *Id.* at 757 (quoting *Int'l Shoe*, 326 U.S. at 318). Indeed, it is "incredibly difficult to establish general jurisdiction in a forum other than the place of incorporation or principal place of business." *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014).

### 2.     Specific Jurisdiction

Unlike general jurisdiction, specific jurisdiction exists only when the factual basis for the complaint arises out of or relates to the forum and creates a substantial connection with the forum. *Asahi Metal Indus. Co. v. Super. Ct. of Cal.*, 480 U.S. 102, 112-13 (1987); *World-Wide Volkswagen Corp.*, 444 U.S. at 292. To satisfy the due process standard for specific jurisdiction, a defendant must have "fair warning that a particular activity may subject [it] to the jurisdiction of a foreign sovereign." *Burger King*, 471 U.S. at 472. When a court seeks to exercise specific jurisdiction over out-of-state defendants, the "fair warning" requirement is satisfied "if the defendant has 'purposefully directed' [its] activities at residents of the forum and the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Id*. This requirement

"ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person.'" *Id.* at 475.

The Federal Circuit applies a three-part test to determine whether a court may exercise specific jurisdiction: "(1) whether the defendant purposefully directs activities at the forum's residents; (2) whether the claim arises out of or relates to those activities; and (3) whether assertion of personal jurisdiction is reasonable and fair." *AFTG-TG*, 689 F.3d at 1361. The plaintiff has the burden of proving prongs one and two of the test. *Grober v. Mako Prods., Inc.*, 686 F.3d 1335, 1346 (Fed. Cir. 2012).

### B.    MOVI Fails To Allege Facts Sufficient To Establish Personal Jurisdiction

At a minimum, a plaintiff must make a *prima facie* showing of personal jurisdiction to survive a motion to dismiss. *See Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1017 (Fed. Cir. 2009). To make such a showing, MOVI must "demonstrate facts that, if true, would support jurisdiction" over NexGuard USA. *Campbell Pet Co. v. Miale*, 542 F.3d 879, 888 (Fed. Cir. 2008). A complaint containing nothing more than "bare formulaic accusation[s]" of personal jurisdiction fails to satisfy the requisite prima facie showing and must be dismissed. *See AFTG-TG*, 689 F.3d at 1365-67; *see also Am. Realty Trust, Inc. v. Hamilton Lane Advisors*, 115 Fed. Appx. 662, n.16 (5th Cir. 2004) (explaining that "bare allegations . . . without factual support do not suffice to establish minimum contacts for personal jurisdiction purposes.").

The jurisdictional allegations contained in MOVI's complaint are insufficient to establish this Court's personal jurisdiction over NexGuard USA. The first sentence relied on by MOVI to establish personal jurisdiction contains nothing more than a restatement of the applicable law: Kudelski Group has "established minimum contacts with this forum such that the exercise of jurisdiction over Kudelski Group would not offend traditional notions of fair play and substantial

justice." (Dkt. No. 1, ¶ 12.) Such "bare formulaic accusations" are not enough to warrant this Court's exercise of personal jurisdiction over NexGuard USA. Likewise, the allegation that "Kudelski Group, directly and/or through subsidiaries or intermediaries (including distributors, retailers, and others), has committed and continues to commit acts of infringement in this District by, among other things, offering to sell and selling products and/or services that infringe the patents-in-suit" (*id.*) cannot save MOVI from its deficient pleading of personal jurisdiction. Even if accepted as true, these allegations are so vague that it is not clear whether a product or service is being sold, much less what product or service, and whether NexGuard USA itself, one of its parents or subsidiaries, or an unrelated entity such as a retailer or distributor is engaging in these activities. For the same reasons, MOVI's allegation that "the Kudelski Group [patent-in-suit] Products are provided to businesses and individuals located in the Eastern District of Texas" are insufficient to establish personal jurisdiction as it does not state that NexGuard USA (or any other defendant) is providing the products. (Dkt. No. 1, ¶¶ 36, 63, 91, 118.) Finally, MOVI's statement that NexGuard "encodes and decodes video content using infringing watermarking technologies for end users and content providers in the Eastern District of Texas" is a vague, conclusory allegation that simply restates claim language, does not allege an infringing act, and fails to provide any factual basis. (Dkt. No. 1, ¶ 8.) And NexGuard USA has shown that it does not encode and decode video content in the Eastern District of Texas, does not have a physical presence in the Eastern District of Texas, and does not design, develop, make or sell products in Texas. Indeed, NexGuard has had only two, infrequent and minimal contacts as described above in Section III.B. (Tholen Decl., ¶¶ 4-16.)

Likewise, the final allegation in this paragraph that "subsidiaries of the Kudelski Group are registered to do business in the State of Texas" (Compl., ¶ 12) is unclear at best, does not

EAST\137950041

identify any specific subsidiaries that are registered, and does not state that these subsidiaries are the same ones engaged in the allegedly infringing activities. Registration to do business in a state is nowhere near as substantial as being incorporated or having a principal place of business in that state, and thus does not rise to the level of systematic and continuous contacts necessary to confer general jurisdiction. Regardless, these vague allegations do not even appear to be directed at NexGuard USA.

The sole allegation attributed directly to NexGuard USA states that NexGuard USA "encodes and decodes video content using infringing watermarking technologies for end users and content providers in the Eastern District of Texas." (Dkt. No. 1, ¶ 8). This vague, unsupported, generic assertion is repeated nearly verbatim for two other defendants in this case, and fails to provide any specific factual allegation of a product or service that is offered by NexGuard USA to any content provider or end user in the Eastern District of Texas. The list of accused products identified later in the complaint is attributed to the "Kudelski Group," not NexGuard in particular, and bears no relationship to any activity, sale, or offer for sale directed at the Eastern District of Texas. Importantly, NexGuard USA has shown that it does not encode and decode video content in the Eastern District of Texas. (Tholen Decl., ¶ 15.)

As a result, MOVI's failure to make a single factual allegation that can establish either general or specific jurisdiction leads to the conclusion that MOVI's claims against NexGuard USA should be dismissed.

### C. Personal Jurisdiction Does Not Lie Over NexGuard USA

#### 1. This Court lacks General Personal Jurisdiction over NexGuard USA

MOVI does not make any factual allegations claiming that NexGuard USA has "continuous and systematic" contacts with the State of Texas that support a finding of general jurisdiction. Not only does MOVI fail to make a *prima facie* showing that this Court has general

-14-

jurisdiction over NexGuard USA, but the evidence submitted by NexGuard USA with this motion shows that MOVI cannot overcome its deficient pleadings. NexGuard USA is not incorporated in Texas nor does it have a principal place of business in Texas. (Tholen Decl., ¶¶ 3-4.) Moreover, NexGuard USA does not have the "continuous and systematic" contacts with Texas sufficient to render it "at home" in the State. In fact, NexGuard USA (i) does not have offices located in Texas; (ii) does not own real property in Texas; (iii) is not registered to do business in Texas; (iv) does not have a designated agent for service of process in Texas; or (v) does not maintain telephone numbers, mailing addresses or bank accounts in Texas. (*Id.* at ¶¶ 5-9.) As a result, NexGuard USA has no approximate physical presence in the Eastern District of Texas, and thus the Court should find that it lacks general jurisdiction over NexGuard USA. *See Acceleron, LLC v. Egenera, Inc.*, 634 F. Supp. 2d 758, 769-70 (E.D. Tex. 2009) (granting the defendants' motion to dismiss for lack of personal jurisdiction because the plaintiff failed to make a *prima facie* showing of personal jurisdiction); *Diebold Election Sys. v. AI Tech., Inc.*, 562 F. Supp. 2d 866, 876 (E.D. Tex. 2008) (finding lack of general jurisdiction because "none of the Defendants ha[d] the amount and quality of contacts that would even approach the ballpark of 'continuous and systematic'").

### 2. This Court lacks Specific Personal Jurisdiction over NexGuard USA

This Court also does not have specific jurisdiction over NexGuard USA. Specific jurisdiction "must be based on activities that arise out of or relate to the case of action." *Autogenomics*, 566 F.3d at 1017; *Burger King*, 471 U.S. at 476. MOVI has the burden of proving the first two prongs. Only if MOVI meets its burden of proof does the burden shift to NexGuard USA to show that the exercise of personal jurisdiction is not reasonable and fair. *Grober*, 686 F.3d at 1346. MOVI has not met and cannot meet its burden.

Patent infringement occurs when a party "without authority makes, uses, offers to sell or sells any patented invention." *HollyAnne Corp. v. TFT, Inc*., 199 F.3d 1304, 1308 (Fed. Cir. 1999) (citing 35 U.S.C. § 271(a)). Thus, MOVI must present some evidence that NexGuard USA engaged in one of those activities purposefully directed at Texas with respect to the accused products. *Id*.; *Grober*, 686 F.3d at 1346-47 (finding no specific jurisdiction in a patent infringement case where the defendant never shipped the accused products to California); *see also Rates Tech. Inc. v. Nortel Networks Corp*., 399 F.3d 1302, 1306 (Fed. Cir. 2005) (affirming dismissal of a foreign holding company for a lack of personal jurisdiction where there was no evidence that the holding company "made, used, sold, or offered to sell the accused products").

As discussed above, MOVI makes three unsupported factual allegations: (1) The "Kudelski Group" and/or its subsidiaries have "committed and continues to commit acts of infringement in this District by, among other things, offering to sell and selling products and/or services that infringe the patents-in-suit" (Dkt. No. 1, ¶ 12); (2) "the Kudelski Group [patent-in-suit] Products are provided to businesses and individuals located in the Eastern District of Texas" (Dkt. No. 1, ¶¶ 36, 63, 91, 118); and (3) NexGuard Labs USA, Inc. encodes and decodes video content using infringing watermarking technologies for end users and content providers in the Eastern District of Texas" (Dkt. No. 1, ¶ 8). None of these allegations establish that (1) *NexGuard USA* makes or directs sales or offers to sale of any particular infringing product or service to residents of the Eastern District of Texas or (2) any activities allegedly undertaken by Kudelski Group's subsidiaries are related to MOVI's claims of infringement *against NexGuard USA*. Furthermore, NexGuard USA has established that it does not sell the Accused Products in Texas, contract with any customers or conclude sales with any customers for NexGuard products anywhere, much less in Texas (Tholen Decl., ¶¶ 12, 14); *see Acosta v. Suomy S.R.L.*, No. 2:14-

cv-455, 2015 WL 4250422, at *3 (S.D. Tex. Jul. 13, 2015) (granting motion to dismiss for lack of personal jurisdiction because, *inter alia*, Defendant's affidavit evidence specifically controverted the pleadings) (citing *Jackson v. Tanfoglio Giuseppe, S.R.L.*, 615 F.3d 579, 586 (5th Cir. 2010)). NexGuard has also established that it does not encode and decode video content for end users and content providers in the Eastern District of Texas. (Tholen Decl., ¶ 15.) MOVI cannot salvage its allegations of specific jurisdiction because the facts submitted by NexGuard USA show that any contacts it has had with the State of Texas have been limited, infrequent and unrelated. Further, NexGuard USA has not purposefully directed its activities at the residents of Texas in any way arising out of or relating to MOVI's patent infringing claims, much less contacts that warrant exercise of specific jurisdiction in this case. (*Id.* at ¶¶ 4-16.) Accordingly, the Due Process Clause does not permit the exercise of specific jurisdiction over NexGuard USA in this case.

Finally, even if this Court were to somehow find MOVI's pleadings sufficient to meet the first two prongs of the three-prong test, it would be unreasonable and unfair for this Court to exercise specific personal jurisdiction over NexGuard USA. *See AFTG-TG*, 689 F.3d at 1361. To determine whether exercising personal jurisdiction would comport with "fair play and substantial justice," courts consider five factors: (1) the burden on the defendant; (2) the forum's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the states in furthering fundamental substantive social policies. *Burger King*, 471 U.S. at 477-78. A balancing of these factors establishes that the exercise of specific personal jurisdiction over NexGuard USA would not be fair and reasonable.

The first factor weighs heavily against the exercise of personal jurisdiction because NexGuard USA is based in Delaware and has no relevant contacts with Texas involving the accused products in this case. (Tholen Decl., ¶¶ 3-4, 13.) NexGuard's one contact with Texas is the result of a relationship that was formed while that contact was based in Canada. (*Id.* at ¶ 16.) Therefore, the burden of making NexGuard USA defend a suit in Texas would be unreasonable and unfair. The second and third factors also favor a finding that there is no specific personal jurisdiction because the State of Texas has no interest in adjudicating a baseless claim against a defendant with no relevant contacts with Texas. The fourth and fifth factors do not apply here because there are no forums competing for the resolution of MOVI's claims. Thus, in light of these facts and the burden that would needlessly be placed on NexGuard USA, a finding of specific personal jurisdiction would be unreasonable and unfair.

Consequently, because there is no general or specific personal jurisdiction over NexGuard USA, the Court should dismiss the claims as to NexGuard USA.

## V. THE COURT SHOULD DISMISS MOVI'S CLAIMS AGAINST NEXGUARD USA FOR FAILURE TO STATE A CLAIM

### A. Legal Standards for Pleading Patent Infringement Claims

The Federal Rules require complaints to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "A plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 545 (quotations and modifications omitted). A motion filed under Rule 12(b)(6) tests the sufficiency of a complaint's factual allegations. In a patent case, the court analyzes a motion to dismiss for failure to state a claim under the law of the regional circuit, here the Fifth Circuit. *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l. Ass'n.*, 776 F.3d 1343, 1346 (Fed.

Cir. 2014) (*citing In re Bill of Lading*, 681 F.3d 1223, 1331 (Fed. Cir. 2012)).

Claims for willful and indirect infringement are required to meet the pleading threshold governed by the Supreme Court's holdings in *Twombly* and *Iqbal*. *See In re Bill of Lading*, 681 F.3d at 1336-37 (*citing Twombly*, 550 U.S. 544 (2007) and *Iqbal*, 556 U.S. 662 (2009)); *see also U.S. Ethernet Innovations, LLC v. Cirrus Logic, Inc.*, No. 6:12-cv-366, 2013 WL 8482270, at *3 (E.D. Tex. Mar. 6, 2013) ("[C]laims for indirect infringement or willful infringement must be judged by the pleading standards articulated in *Twombly* and *Iqbal*."). Prior to December 1, 2015, a plaintiff could avoid dismissal of its claims for direct infringement by complying only with the simpler pleading requirements of Form 18 of the Federal Rules of Civil Procedure. Form 18 required merely "a statement that defendant has been infringing the patent 'by making, selling, and using [the device] embodying the patent.'" *See In re Bill of Lading*, 681 F.3d at 1334; Fed. R. Civ. P. Form 18. However, the recent amendments to the Federal Rules abrogated Form 18 and required complaints alleging patent infringement to satisfy the more stringent standard set forth in *Iqbal* and *Twombly*. *Ruby Sands LLC v. Am. Nat'l Bank of Texas*, No. 2:15-CV-1955-JRG, 2016 WL 3542430, at *2 (E.D. Tex. June 28, 2016) ("Given the abrogation of Rule 84, Form 18 no longer provides a safe harbor for direct infringement claims").

Under the *Twombly* and *Iqbal* analysis, there are two steps in determining whether a pleading is sufficient. *See Iqbal*, 556 U.S. at 679. First, a court identifies the allegations that are not entitled to the presumption of truth, which includes any allegations that are "bare assertions," merely "formulaic recitation[s] of elements," or "conclusory." *Id.* at 679-81. Second, a court examines the remaining "factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief." *Id.* at 681; *see also Touchscreen Gestures LLC v. Research in Motion Ltd.*, No. 6:12-cv-263, 2013 WL 8505349, at *1 (E.D. Tex. Mar. 27, 2013). To

demonstrate plausibility, a plaintiff must go beyond pleading facts that, when assumed to be true, are "merely consistent with a defendant's liability," and must instead plead facts sufficient to permit the "reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (quotations omitted). A complaint will not suffice if it "tenders 'naked assertions' devoid of 'further factual enhancement.'" *Id.* Merely pleading the "bare elements of [a] cause of action" will result in dismissal. *Id.* at 686.

### B. MOVI's Willful Infringement Claims Should Be Dismissed

MOVI's allegations of willful infringement should be dismissed because they fail to allege facts that state a plausible claim for relief. As an initial matter, the Complaint is entirely devoid of factual assertions that would plausibly support a conclusion that NexGuard USA's conduct constituted willful infringement. The Complaint also fails to allege that NexGuard USA had the requisite pre-suit knowledge of the Asserted Patents with respect to Counts II-IV, which is an independent basis to dismiss those counts.

#### 1. The Complaint Lacks Factual Allegations Supporting a Plausible Inference of Egregious Misconduct by NexGuard USA

The Complaint lacks any factual allegations establishing a plausible assertion of willful infringement. Relevant factors to a determination of willfulness include: (1) whether the infringement was "willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant," or "characteristic of a pirate"; (2) whether the accused infringer was aware of the asserted patent; (3) whether the accused infringer disregarded information or otherwise acted in a subjectively reckless manner concerning the patented invention and potential infringement; (4) whether the accused infringer copied or designed around the patented invention; and (5) whether the accused infringer obtained an opinion of counsel that the asserted patent is not infringed, invalid, or unenforceable. *See Halo Elec., Inc. v. Pulse Elec., Inc.*, 136 S. Ct. 1923, 1927 (2016).

Enhanced damages are only warranted in "egregious cases of misconduct beyond typical infringement" and should not be awarded in "garden-variety cases." *Id*. at 1935.

MOVI purports to assert a willfulness claim by making vague, unsupported claims that: (1) each patent "is well known in the industry," (2) "several" of defendants' competitors "have paid considerable licensing fees" for their use of the technology claimed in the patent; and (3) "[i]n an effort to gain an advantage over Kudelski Group's competitors by utilizing the same licensed technology without paying reasonable royalties, Kudelski Group infringed" the patents "in a manner best described as willful, wanton, malicious, in bad faith, deliberate, consciously, wrongful, flagrant, or characteristic of a pirate." (Dkt. No. 1, ¶¶ 53, 80, 107, 131.) MOVI's claims are not sufficient because it does not even distinguish among the various defendants in its willful infringement allegations, instead referring to all defendants collectively as the "Kudelski Group." Moreover, these allegations do not support a finding that NexGuard USA had specific knowledge of the patents or that its own conduct would be likely to infringe those patents. Finally, these allegations are far too vague and conclusory (or are restatements of law) and cannot sufficiently show that MOVI is entitled to relief under a claim for willful infringement. *Iqbal*, 556 U.S. at 678 (holding that unsupported legal conclusions are insufficient to defeat a motion to dismiss).

> **2. MOVI's Willful Infringement Claims for Counts II-IV Should Be Dismissed Because the Complaint Fails to Allege that NexGuard USA Had the Requisite Pre-Suit Knowledge of the Asserted Patents**

The Court should dismiss MOVI's willful infringement claims in Counts II-IV because MOVI also fails to plead that NexGuard USA had the requisite pre-suit knowledge of the Asserted Patents. Culpability in a willful infringement claim is "measured against the knowledge of the actor at the time of the challenged conduct." *Halo*, 136 S. Ct. at 1933. Thus, courts have held that a willfulness claim asserted in the plaintiff's original complaint "must

-21-

necessarily be grounded exclusively in the accused infringer's ***pre-filing conduct***." *See In re Seagate*, 497 F. 3d 1360, 1374 (Fed. Cir. 2007) (rev'd on other grounds) (emphasis added); *see also Opticurrent, LLC v. Power Integrations, Inc. et al*, No. 2:16-cv-00325-JRG, Dkt. No. 34, slip. op. at 3 (E.D. Tex. Oct. 12, 2016) (holding that "pre-suit knowledge of the asserted patent is generally required to maintain a claim of willfulness."). Furthermore, the complaint "must adequately allege 'factual circumstances in which the patents-in-suit [are] called to the attention' of the defendants." *MONEC Holding*, 897 F. Supp. 2d at 236. However, Counts II-IV of the Complaint lack any factual allegation of pre-suit knowledge of the Asserted Patents.

In fact, MOVI's allegations in Counts II-IV affirmatively admit that MOVI has not alleged pre-suit knowledge by NexGuard USA. MOVI's sole allegation in these counts is that NexGuard USA became aware of each of the Asserted Patents "since at least service of this Complaint or shortly thereafter." (Dkt. No. 1, ¶¶ 51, 78, 105, 129.) This allegation alone cannot serve as the basis for a willful infringement claim; indeed, pre-suit knowledge itself may not be sufficient to prove willfulness. *See Halo*, 136 S. Ct. at 1936 (Breyer, J. concurring) (stating that willful misconduct does not mean that a court "may award enhanced damages simply because the evidence shows that the infringer knew about the patent and nothing more"; instead, factual circumstances must transform "simple knowledge" into "egregious behavior"). This Court has dismissed willful infringement allegations under Fed. R. Civ. P. 12(b)(6) where only post-filing willfulness was alleged and the plaintiff did not seek a preliminary injunction. *See, e.g.*, *Touchscreen Gestures*, 2013 WL 8505349, at *2 (filing of the complaint does not provide sufficient notice to support post-filing willful infringement claims); *Webmap Techs., LLC v. Google, Inc.*, No. 2:09-cv-343, 2010 WL 3768097, at *3 (E.D. Tex. Sept. 10, 2010) *report and recommendation adopted*, No. 2:09-cv-343, 2010 WL 3835118 (E.D. Tex. Sept. 28, 2010)

(dismissing post-filing willfulness claim where plaintiff had not sought a preliminary injunction). MOVI's allegations of post-filing are an independent basis for dismissal of MOVI's willful infringement allegations in Counts II-IV of the Complaint.

### C.    MOVI's Indirect Infringement Claims Should Be Dismissed

For a claim of induced infringement to survive a motion to dismiss, the party's complaint must include facts that show: (1) direct infringement by another; (2) the defendant specifically intended their customers to infringe the patent; and (3) knew that the customer's acts constituted infringement. *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006) ("[I]nducement requires that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement.") (internal quotations omitted); *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 765-66 (2011). The Supreme Court recently made it expressly clear that a claim for induced infringement "can only attach if the ***defendant knew of the patent*** and knew as well that 'the induced acts constitute patent infringement.'" *Commil USA, LLC v. Cisco Sys., Inc.*, 135 S. Ct. 1920, 1926 (2015) (quoting *Global-Tech Appliances*, 131 S. Ct. at 2068)(emphasis added). As the Court emphasized, a claim of induced infringement "requires proof the defendant knew the acts were infringing. And the Court's opinion [in *Global Tech*] was clear in rejecting any lesser mental state as the standard." *Commil*, 135 S. Ct. at 1928. Yet, the Complaint contains no factual allegations that even hint at the requisite knowledge and specific intent by NexGuard USA to induce infringement. The induced infringement claims should therefore be dismissed.

MOVI's allegations regarding inducement state that NexGuard USA "performed the acts that constitute induced infringement, and would induce actual infringement, with knowledge of the '127 patent and with the knowledge that the induced acts would constitute infringement" because:

Kudelski Group provides the Kudelski Group '127 Products that have the capability of operating in a manner that infringe one or more of the claims of the '127 patent . . . and Kudelski Group further provides documentation and training materials that cause customers and end users of the Kudelski Group '127 Products to utilize the products in a manner that directly infringe one or more claims of the '127 patent. By providing instruction and training to customers and end-users on how to use the Kudelski Group '127 Products in a manner that directly infringes one or more claims of the '127 patent . . . Kudelski Group specifically intended to induce infringement of the '127 patent. On information and belief, Kudelski Group engaged in such inducement to promote the sales of the Kudelski Group '127 Products, e.g., through Kudelski Group user manuals, product support, marketing materials, and training materials to actively induce the users of the accused products to infringe the '127 patent.

(Dkt. No. 1, ¶¶ 52, 79, 106, 130.)

These conclusory statements are devoid of: (1) any factual allegation that would support a conclusion that NexGuard USA had knowledge of or was willfully blind to any infringing conduct; (2) any factual allegation supporting MOVI's bare assertion that NexGuard USA acted with the requisite specific intent; and (3) as established above, any allegation in Counts II-IV that NexGuard USA even knew of the '000, '524 and '536 patents before the Complaint was filed. Such sparse and conclusory allegations are insufficient to support an induced infringement claim. *See Takeda Pharms. U.S.A.*, 785 F.3d at 630 (providing "a lawful product by lawful means, [even] with the knowledge that an unaffiliated, third party may infringe, cannot, in and of itself, constitute inducement of infringement.") (internal quotation marks omitted); *Core Wireless*, No. 14-cv-751, Dkt. No. 60 at p. 7 (recommending grant of motion to dismiss induced infringement because "generic allegations that an alleged infringer provides instructional materials along with the accused products, without more, are insufficient to create a reasonable inference of specific intent for the purposes of an induced infringement claim.").

Indeed, these allegations are very similar to the ones dismissed in *U.S. Ethernet Innovations.* 2013 WL 8482270, at *4. In this case, the plaintiff asserted that the defendant had

"actual or constructive knowledge of the asserted patents," supplied "infringing systems and components to its customers," and that customers who "purchase . . . and operate such systems and components thereof in accordance with [defendant's] instructions directly infringe one or more claims." *Id.* The court held that the plaintiff's complaint "alleges a direct infringer, namely [defendant's] customers, but nevertheless fails to: (1) recite the elements of an inducement claim; and (2) allege any facts that, if taken as true, establish a plausible inference that [defendant] had the specific intent to induce its customers actions, and knowledge that those actions amounted to infringement." *Id.*

Furthermore, MOVI's allegations are primarily legal conclusions, and they do no more than recite the required elements for a claim of induced infringement. Such "'naked assertion[s]' devoid of 'further factual enhancement'" should be disregarded when assessing the sufficiency of a claim. *Iqbal*, 556 U.S. at 678. MOVI's Complaint thus fails to adequately plead a factual basis for the requisite knowledge and specific intent to induce infringement. *Global-Tech*, 131 S. Ct. at 2067 (stating that "[t]he inducement rule ... premises liability on purposeful, culpable expression and conduct.") (internal citations omitted); *see also Commil*, 135 S. Ct. at 1926. MOVI's induced infringement claims should therefore be dismissed.

### D. MOVI's Direct Infringement Claims Should Be Dismissed

MOVI's Complaint has not alleged sufficient facts to state a plausible claim of patent infringement because it does not permit a court to infer that any specific accused product infringes each element of at least one claim. *Iqbal*, 556 U.S. at 678; *see also Atlas IP, LLC*, No. 15-C-10746, Slip op. at 9 (dismissing complaint because "factual allegations that do not permit a court to infer that the accused product infringes each element of at least one claim are not suggestive of infringement"); *Macronix Int'l Co. v. Spansion Inc.*, 4 F. Supp. 3d 797, 798-99 (E.D. Va. 2014) (requiring complaint to recite "the specific claim or claims which are alleged to

be infringed, and the elements thereof that are alleged to be infringed by the allegedly infringing product, and how that product is alleged to infringe those elements.").  Further, the Complaint's threadbare allegations do not provide NexGuard USA with the "fair notice" required by the Federal Rules of Civil Procedure.  *Twombly*, 550 U.S. at 555; *see also Ashgari-Kamrani v. United Servs. Auto. Ass'n*, No. 2:15-cv-478, 2016 U.S. Dist. LEXIS 48012, at *9-10 (E.D. Va. Mar. 22, 2016) (Holding that fair notice generally requires the complaint to plead facts that "specify which features of [the accused products] correspond to" each specific claim element).

While lengthy, MOVI's allegations are nothing more than formulaic recitations of the claim elements for each patent.  As demonstrated above in Section III.C with respect to claim 10 of the '127 patent and MOVI's corresponding allegations, MOVI does not identify *which* accused product corresponds to *which* claim element, nor does MOVI allege a single fact as to *how* or *why* these claims are met by any of the accused products.  In fact, every single one of the direct infringement allegations for the '127 and '536 patents, aside from the list of accused products, are copied verbatim in two other cases where MOVI asserts the same two patents.  *See Marking Object Virtualization Intelligence, LLC v. ARRIS Group Inc. et al*, No. 2:16-cv-01045, Dkt. No. 1, ¶¶ 29-55, 152-175 (E.D. Tex. Sept. 22, 2016); *Marking Object Virtualization Intelligence, LLC v. STMicroelectronics, Inc. et al*, No. 2:16-cv-01113, Dkt. No. 1, ¶¶ 27-52, 111-134 (E.D. Tex. Oct. 7, 2016).  In essence, MOVI is copy-pasting its patent infringement allegations from complaint to complaint without adding any further detail about how the specifically accused products in this case meet those asserted claims.  This is little better than submitting copies of the patents in place of the Complaint.  Thus, MOVI's direct infringement claims should be dismissed.

## VI.    CONCLUSION

For the foregoing reasons, this Court should grant NexGuard USA's motion to dismiss all

claims against it under: (1) Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction; and (2) Fed.

R. Civ. P. 12(b)(6) for failure to state a claim as to MOVI's direct infringement, indirect

infringement and willful infringement allegations.

Dated: December 12, 2016

Respectfully submitted,

*/s/ John M. Guaragna*
John M. Guaragna
State Bar No.: TX 24043308
DLA Piper LLP (US)
401 Congress, Suite 2500
Austin, TX 78701
Tel. (512) 457-7000
Fax (512) 457-7001
john.guaragna@dlapiper.com

Mark D. Fowler (*pro hac vice to be filed*)
Carrie Williamson (*pro hac vice to be filed*)
Erik R. Fuehrer
2000 University Avenue
East Palo Alto, CA 94303
Tel. (650) 833-2000
Fax (650) 833-2001

James M. Heintz (*pro hac vice to be filed*)
11911 Freedom Dr.
Reston, VA 20190
Tel. (703) 733-4000
Fax (703)733-5000

COUNSEL FOR DEFENDANT NEXGUARD
USA S.A. d/b/a NEXGUARD USA GROUP

EAST\137950041

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on December 12, 2016, a true and correct copy of

the foregoing document was electronically filed with the Clerk of Court using the CM/ECF

system, which will automatically send notification of such filing to all attorneys of record.


*/s/ John M. Guaragna*
John M. Guaragna